**Richard A. HALL and Sharon A. Newhart, Individually and as Executors of the Estate of Carol B. Hall, Appellees**

v.

**Donald JACKSON, M.D., Tyler Memorial Hospital, Appellants.**

Superior Court of Pennsylvania.

Submitted July 16, 2001.

Filed Nov. 28, 2001.

Reargument Denied Feb. 1, 2002.

---

Paul A. Barrett, Scranton, for Tyler Memorial Hosp.

Richard T. Curley, Allentown, for Jackson.

Laurence M. Kelly, Montrose, for Hall and Newhart.

Before: JOHNSON, TODD and HESTER, JJ.

TODD, J.

■ ¶ 1 Presently before this Court are the cross appeals of Richard Hall and Sharon Newhart, individually and as executors of the Estate of Carol B. Hall ("Plaintiffs"), Donald Jackson, M.D., and Tyler Memorial Hospital (the "Hospital") from the November 22, 2000 judgment entered following a jury verdict in favor of Plaintiffs.[1] We affirm.

---

1. We note that all parties purport to appeal from the November 14, 2000 Order denying their post trial motions. However, an appeal properly lies from the entry of judgment, not

¶ 2 The unfortunate facts of this case are as follows: On December 17, 1991, while working as a security guard at the Proctor & Gamble Paper Products Company plant in Wyoming County, Pennsylvania, Carol B. Hall slipped and fell on a patch of ice outside the plant. She experienced pain in her chest, neck, and arms, and therefore drove herself to Tyler Memorial Hospital's emergency room for examination. The Hospital had a written policy that applied to emergency room patients who either had no family physician, or whose family physician did not have staff privileges at the Hospital. In such cases, the Hospital assigned a physician from its rotating "daytime on-call list." Following treatment, the patient's emergency room records were then sent to the assigned physician.

¶ 3 Hall's family physician, Raymond L. Bennett, M.D., did not have privileges at the Hospital. The Hospital accordingly assigned Dr. Clarence Mast as her physician, but Dr. Mast never examined Hall. While at the Hospital, Hall was examined by Dr. Jackson, the emergency room physician, who ordered x-rays to determine whether Hall had fractured any bones in her arms or torso. Although the x-ray revealed no bone fractures, it did reveal a one-centimeter "coin" lesion on one of Hall's lungs. The radiologist notified Dr. Jackson of his finding, and Dr. Jackson's emergency room notes indicate that he was aware of the lesion. Dr. Jackson testified that while he did not specifically remember informing Hall of her x-ray results, it was his practice to notify patients of their x-ray results, and, therefore, he assumed that he had done so in this case. However, Hall testified that neither Dr. Jackson nor anyone else at the Hospital advised her of the lesion.[2] Hall was not admitted to the Hospital, but was discharged from the emergency room and sent back to work with written instructions to follow up with her family physician if necessary. Pursuant to the Hospital's policy, Hall's emergency room records were then forwarded to Dr. Mast.[3]

¶ 4 Sadly, Hall did not follow up with her family physician after her accident. In July 1994, after developing what appeared to be chronic bronchial problems, Hall saw her family physician, Dr. Bennett, who ordered an x-ray to determine whether Hall had pneumonia. This x-ray revealed a large seven-centimeter mass on Hall's lung, in the same location as the coin lesion discovered by the radiologist at the Hospital in 1991. Dr. Bennett referred Hall to a specialist, who determined that she had inoperable stage 3B-lung cancer. Hall died on August 23, 1995.

¶ 5 At trial, Plaintiffs' theory of liability as to Dr. Jackson was based on his failure to notify Hall of the results of her x-ray, specifically, the existence of the lesion. Plaintiffs presented expert testimony indicating that had Hall's tumor been treated in 1991, she would have had an expected survival rate of 80 to 90 percent, instead of the 18 percent survival rate that existed

from the denial of post-trial motions. *See Johnston the Florist, Inc. v. TEDCO Construction Corp.,* 441 Pa.Super. 281, 657 A.2d 511 (1995). We have corrected the appeal paragraph accordingly.

**2.** The instant action was commenced while Hall was alive, but Hall died prior to trial. Her testimony was preserved by video deposition that was presented to the jury.

**3.** Dr. Mast testified at trial that it was his practice to retain records of patients seen in the Hospital's emergency room for several weeks. If the patient did not contact Dr. Mast's office during this time period, the records were then discarded, and he made no effort to contact patients who had not previously established a doctor-patient relationship with him.

when she was finally treated in 1994. Plaintiffs' theory of liability regarding the Hospital was twofold: vicarious liability as to Dr. Jackson's conduct, in that he was an agent of the Hospital, and corporate liability in that the Hospital's policy of assigning a physician to a patient rather than providing information to the patient's known family physician increased the risk of harm to the patient.[4] At the close of Plaintiffs' case, the trial court sustained the Hospital's motion for compulsory non-suit on the issue of punitive damages, concluding that Plaintiffs failed to present any evidence that the Hospital had acted in bad faith or with malice or ill will. Ultimately, the jury determined that both Dr. Jackson and the Hospital were negligent, but that Hall had been contributorily negligent in failing to follow the Hospital's discharge instructions to follow up with her family physician. The jury awarded Plaintiffs $1,694,928.04, but the trial court reduced the award to $1,496,621.43 to reflect the jury's finding that Hall was 11.7 percent contributorily negligent. Delay damages were subsequently added by the trial court.

¶ 6 Plaintiffs filed a post-verdict motion requesting a new trial limited to the issue of whether they were entitled to recover punitive damages against the Hospital, and further moved for judgment notwithstanding the verdict ("JNOV") with respect to the finding of contributory negligence by Hall.[5] Dr. Jackson filed a post-trial motion requesting JNOV, or, alternatively, a new trial, based on a claim that the verdict was inconsistent with the jury's finding that Hall was contributorily negligent. The Hospital filed a post-trial motion seeking JNOV or a new trial, claiming, *inter alia,* that the evidence was insufficient to sustain the verdict; that the verdict was excessive and against the weight of the evidence to the extent it awarded damages for loss of enjoyment of life's pleasures because no evidence justifying such an award was presented; and that the trial court committed several errors with respect to its preclusion of testimony and instructions to the jury. On November 13, 2000, the trial court denied the post-trial motions of all parties. These cross appeals followed.

¶ 7 We first address the issues presented by Dr. Jackson in his brief to this Court, namely:

A. Whether the trial court erred in denying a new trial on the basis that the jury's verdict was inconsistent?

B. Whether the trial court erred in refusing to charge the jury on superseding causation?

C. Whether the trial court erred in permitting hearsay testimony from [the] decedent's family members?

D. Whether the trial court erred in instructing the jury on both direct causation and increased risk of harm?

(Dr. Jackson's Brief, at 4.)

¶ 8 In *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000), the Supreme Court of Pennsylvania reexamined the appropriate standard of review of a motion for a new trial at both the trial court and appellate levels. The

---

4. Dr. Mast originally was named as a defendant in this action. The counts alleging Dr. Mast's negligence were dismissed following preliminary objections based on the court's finding that the doctor-patient relationship required in a professional medical negligence case did not exist.

5. The issue of contributory negligence by Hall was not raised by Plaintiffs at oral argument on their post-verdict motion, and has not been presented to this Court for review.

Court explained that the trial court must follow a two-step process in responding to a request for a new trial. The trial court first must determine whether a factual, legal or discretionary mistake was made at trial. *Id.* at 467, 756 A.2d at 1122. If the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. *Id.* Moreover, the Court noted that "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Id.* (citations omitted).

■ ¶ 9 The Court then set forth an additional two-step analysis for appellate review of a trial court's determination to grant or deny[6] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was or was not made. *Id.* In doing so, the Court noted that the appellate court must apply the appropriate standard of review. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. *Id.* at 468, 756 A.2d at 1123. If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. *Id.* The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. *Id.* at 469, 756 A.2d at 1123 (citations omitted).

■ ¶ 10 If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis. If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial. *Id.* at 468–69, 756 A.2d at 1123.

■ ¶ 11 In the present case, the trial court considered Appellants' allegations of error and determined that no error had occurred. On appeal, therefore, this Court must examine the specific allegations of error by the trial court to determine whether there indeed were mistakes made at trial. If we determine that there were, we must then determine whether the trial court abused its discretion in denying the motion for a new trial.

¶ 12 Dr. Jackson contends that the trial court erred in refusing to grant a new trial on the grounds that the jury's verdict was inconsistent. Specifically, Dr. Jackson argues that by finding him negligent, the jury necessarily concluded that he did not advise Hall of the results of her x-ray, but that such a finding is inconsistent with the jury's finding that Hall was contributorily negligent for failing to follow Dr. Jackson's instructions for follow-up care, as such a finding would have required Hall to follow instructions which were never given. We disagree with Dr. Jackson's argument that the verdict was inconsistent.

■ ¶ 13 Under Pennsylvania law, "there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict." *Kit*

---

6. The Supreme Court specifically held that a review of a denial of a new trial requires the same analysis as a review of a grant of a new trial. *Id.* at 467, 756 A.2d at 1122 (citations omitted).

*v. Mitchell,* 771 A.2d 814, 818–19 (Pa.Super.2001). As the trial court noted in its opinion:

> As the written emergency room record did not state that the patient had been told of [the lesion revealed by the x-ray] ... the jury may well have concluded that Doctor Jackson inadequately informed Ms. Hall of either the existence of the lesion or the seriousness of such a finding. This conclusion is buttressed by Ms. Hall's lack of follow-up care. The jury may also have concluded from the evidence that a reasonable person would have sought follow-up care (or sought help sooner than she did) even though the instructions given to her were inadequate, thereby reducing her risk of serious injury or death. Or the jury could well have concluded that Hall was contributorily negligent by failing to follow the written instructions that she see her family physician for the injuries she sustained in her fall (thereby increasing the chance that her cancer would be timely discovered and treated). In short, there was ample evidence for the jury's determinations of liability which would not be "inconsistent".

(Trial Court Opinion, 11/13/00, at 5.) For the reasons noted above, we agree with the trial court that the verdict was not inconsistent, and find no error in the trial court's refusal to grant Dr. Jackson a new trial on this basis.

■ ¶ 14 Dr. Jackson also sets forth two allegations of error based on the court's jury instructions. We review challenges to jury instructions "to determine if the trial court abused its discretion or committed an error of law. We will not grant a new trial because of an erroneous jury instruction unless the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Fragale v. Brigham,* 741 A.2d 788, 790

(Pa.Super.1999). Further, "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wilson v. Anderson,* 420 Pa.Super. 169, 616 A.2d 34, 36 (1992).

■ ¶ 15 Dr. Jackson first contends that the trial court erred in refusing to charge the jury on superseding causation with respect to the acts or omissions of Dr. Mast and/or Dr. Bennett. A superseding cause is defined as "an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Krasevic v. Goodwill Industries of Central Pennsylvania, Inc.,* 764 A.2d 561, 569 (Pa.Super.2000), *appeal denied,* 2001 WL 1167522 (Pa. October 3, 2001). Additionally, "a [superseding] cause must be an act 'which is so extraordinary as not to have been reasonably foreseeable.'" *Id.* (quoting *Von der Heide v. Commonwealth, Dept. of Transportation,* 553 Pa. 120, 123, 718 A.2d 286, 288 (1998)).

■ ¶ 16 However:

> "'[i]t is manifestly improper for a court ... to submit to a jury, for their determination, a point which the evidence does not warrant.'" It is the exclusive function of the trial court to determine whether the evidence and facts presented at trial create an issue upon which the jury may reasonably differ concerning whether the defendant's conduct was a substantial factor in causing the plaintiff's harm. Furthermore, it is also the trial court's exclusive function "to declare the existence or non-existence of rules which restrict the actor's responsibility short of making him liable for harm which his negligent conduct is a substantial factor in bringing about, and

to determine the circumstances to which such rules are applicable." The "rules" to which this section refers include those concerning superseding causes and intervening forces, .... Only in a case where there is room for reasonable difference of opinion concerning the negligent character of the intervening act of a third person or the reasonable foreseeability of its occurrence should the trial court submit the question of superseding cause to the jury.

*Trude v. Martin*, 442 Pa.Super. 614, 660 A.2d 626, 634 (1995) (citations omitted).

¶ 17 In the instant case, the trial court concluded that the issue of Dr. Mast's conduct as a superseding cause had been waived because no reference was made to Dr. Mast in either Dr. Jackson's or the Hospital's requested points for charge,[7] and that Dr. Jackson failed to present any evidence that Dr. Bennett was negligent, or deviated from the applicable standard of care, resulting in harm to Hall. Thus, the trial court determined that a jury instruction on superseding causation was not warranted. We agree with the trial court's determination.

◼ ¶ 18 Rule 227.1(b) of the Pennsylvania Rules of Civil Procedure provides:

Post–Trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.Civ.P. 227.1(b). Dr. Jackson failed to raise the issue of whether the trial court erred in refusing to instruct the jury on superseding causation in his post-trial motion.[8] Additionally, no evidence was presented that any act by Dr. Bennett harmed Hall, or that Dr. Bennett was negligent in his treatment of Hall. Moreover, to the extent Dr. Jackson asserts that Dr. Bennett's failure to order x-rays when Hall first complained of a cough in March 1993 was a superseding cause, Dr. Jackson presented no evidence to suggest that the discovery of Hall's tumor at that point in time would have prevented her death. Thus, as no question concerning superseding causation existed for the jury, no instruction on this point was warranted, and the trial court did not err in refusing to instruct the jury on this point. *See Krasevic*, 764 A.2d at 569.

◼ ¶ 19 Dr. Jackson also contends that the trial court erred in charging the jury on both direct causation and increased risk of harm, in that a direct causation charge was inappropriate in the instant case, and such an instruction was confusing to the jury and provided Plaintiffs with an alternate theory of causation. We find this argument to have been waived. Rule 227(b) of the Pennsylvania Rules of Civil Procedure requires that all

---

**7.** We note that in his motion, Dr. Jackson attempted to incorporate, to the extent applicable, the Hospital's arguments as his own.

**8.** To the extent that Dr. Jackson attempts to rely on the arguments set forth by the Hospital in its post-trial motion, which included the issue of whether the trial court erred in in-

structing the jury on superseding causation with respect to Dr. Mast, we conclude that this argument has been waived under Rule 227.1(b)(2) as a result of the Hospital's failure to specify in its post-trial motion how the grounds were asserted at trial.

exceptions to the charge to the jury be taken before the jury retires. Neither Dr. Jackson nor the Hospital objected to the trial court's instructions on direct causation and increased risk of harm at trial. Dr. Jackson has also waived this claim under Rule 227.1(b)(1) of the Pennsylvania Rules of Civil Procedure by failing to raise it at trial. Furthermore, Dr. Jackson failed to object to the trial court's jury charge in his post-trial motion, and his claim is therefore also waived under Rule 227.1(b)(2) of the Pennsylvania Rules of Civil Procedure.[9]

■ ¶ 20 Finally, Dr. Jackson argues that the trial court erred in permitting hearsay testimony by Hall's family members. This Court has consistently held that "[a] trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and [an appellate] [c]ourt will reverse only for clear abuse of that discretion." *Commonwealth v. Viera*, 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995) (citations omitted). It is well-settled that "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Kubiac*, 379 Pa.Super. 402, 550 A.2d 219, 223 (1988).

¶ 21 The trial court permitted Hall's daughter, Karen Button, to testify that she had a conversation with her mother several days after Hall's visit to the Hospital, and that during this conversation, Hall told her daughter that following her x-ray, she was told by the Hospital that "she was

fine." The trial court also allowed testimony by Hall's husband, Richard Hall, regarding a statement by his wife that she should have been informed of her x-ray results when she was in the emergency room, and further allowed Hall's other daughter, Sharon Newhart, to testify regarding a statement made by a third party to Hall regarding Hall's lack of awareness of her x-ray results.

■ ¶ 22 We note first that Dr. Jackson, in his post-trial motion, failed to raise the issue of hearsay testimony by any witness. Accordingly, his claim is waived under Rule 227.1(b)(2). Although the Hospital raised the issue of alleged hearsay testimony by Button and Newhart in its post-trial motion, which Dr. Jackson incorporated by reference, the Hospital failed to raise in its post-trial motion any allegation regarding the testimony of Richard Hall. Accordingly, any argument regarding the alleged hearsay testimony of Richard Hall is waived. *See* Pa.R.Civ.P. 227.1(b)(2); *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 574 A.2d 1084 (1990) (to preserve an issue for appellate review, appellant must make timely objection at appropriate stage of proceedings and must specifically raise issue in post-trial motions).

■ ¶ 23 With respect to the testimony of Sharon Newhart, our review of the transcript reveals that there was no testimony elicited from Newhart that specifically pertained to the issue of whether Hall had been told by Dr. Jackson or the Hospital of her x-ray results. Thus, we find Dr. Jackson's argument that the trial court erred in allowing such testimony to be without merit.

---

9. Again, to the extent that Dr. Jackson attempts to incorporate the arguments made by the Hospital in its motion, we note that the Hospital failed to specify in its post-trial motion how the grounds were asserted at trial and, therefore, waived this argument pursuant to Rule 227.1(b). Thus, Dr. Jackson's efforts to bootstrap onto the Hospital's post-trial motion cannot save this argument.

■ ¶ 24 Lastly, we conclude that the alleged hearsay testimony of Karen Button was harmless. Dr. Jackson argues that Button's testimony "bolstered Carol Hall's video testimony in which she indicated that no one at [the Hospital], including Dr. Jackson, advised her of the results of the x-rays taken on December 17, 1991," and that "the Court's cautionary instruction neither cured the error nor mitigated the impact of the foregoing testimony." (Dr. Jackson's Brief, at 17.) We disagree. Following Button's testimony that her mother told her that the Hospital "had told her she was fine and that she would be able to go back to work," the trial court issued the following instruction to the jury:

> the jury will not consider that answer for the truth of the matter that is what was told or not told to Mrs. Hall at the hospital on that date but merely for what she told her daughter several days later. That's the only relevant part or admissible part of that evidence.

(N.T. Trial, 3/22/00, at 112.) We believe that the trial court's instruction was sufficient to alleviate any prejudice which may have occurred as a result of Button's statement, and Dr. Jackson does not provide any evidence to the contrary. Accordingly, Dr. Jackson is not entitled to relief on this basis.

¶ 25 We now turn to the Hospital's arguments on appeal. The Hospital contends that the trial court erred in accepting the jury's award for loss of life's pleasures because: (1) there was no proof of such; (2) there was a separate award for pain and suffering; (3) Hall was not alive at the time of trial; and (4) the nature of the action was transformed into a wrongful death and survival action by formal amendment. The trial court concluded that the Hospital had waived this issue by failing to make a timely objection to the court's charge to the jury. We agree.

■ ¶ 26 As previously noted, Rule 227(b) requires that all exceptions to the jury charge be taken before the jury retires. Pa.R.Civ.P. 227(b). Additionally, as also previously noted, Rule 227.1(b)(2) requires that a post-trial motion "state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived." Pa.R.Civ.P. 227.1(b)(2). The Hospital's post-trial motion alleges that "the Court erred in instructing the jury on loss of enjoyment of life's pleasures in that no testimony or evidence was presented with respect to Carol Hall's loss of enjoyment of life's pleasures." (Hospital's Post–Trial Motion, 3/31/00, at 2.) However, the Hospital fails to specify in its post-trial motion how the grounds on which it sought relief were asserted in pretrial proceedings or at trial, and, in fact, the Hospital does not dispute that it failed to object to the trial court's charge to the jury at trial.

¶ 27 Furthermore, the Hospital's argument in its brief to this Court that because Plaintiffs' action was a wrongful death and survival action, compensation for loss of life's pleasures is not recoverable, and, further, that loss of life's pleasures is a component of pain and suffering for which Plaintiffs were separately compensated, was not raised in its motion for post-trial relief or at trial. Accordingly, we find the Hospital's arguments on appeal to have been waived. *See* Pa.R.Civ.P. 227.1(b); *Taylor v. Celotex Corp., supra.*

■ ¶ 28 Finally, we address Plaintiffs' arguments on appeal. Plaintiffs first claim that the Hospital's procedure under which a staff physician was assigned to emergency room patients who had no family physician or whose family physician was not on staff at the Hospital, and the Hospital's failure to insure that a patient's medical reports were delivered to and acted upon by the assigned physician, constituted suf-

ficiently reckless indifference to the rights of others so as to entitle Plaintiffs to punitive damages. As a result, Plaintiffs argue that the trial court erred in granting the Hospital's motion for non-suit on this issue. Plaintiffs further argue that should this Court determine that the trial court erred in granting the Hospital's motion for non-suit, the appropriate remedy is a new trial that is limited to the question of punitive damages.

¶ 29 This Court's scope and standard of review when determining the propriety of an entry of non-suit is well settled:

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiffs' [sic] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.

*Poleri v. Salkind,* 453 Pa.Super. 159, 633 A.2d 649, 653 (1996) (citations omitted).

¶ 30 This Court also previously has explained:

> [T]he purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function. Therefore, under the law of this Commonwealth, a court may award punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

*Johnson v. Hyundai Motor America,* 698 A.2d 631, 639 (Pa.Super.1997) (citations omitted). We have described "reckless disregard" as follows:

> the actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Taylor v. Albert Einstein Medical Center,* 723 A.2d 1027, 1037 (Pa.Super.1998) (quoting Section 500 of the Restatement (Second) of Torts), *reversed in part on other grounds,* 562 Pa. 176, 754 A.2d 650 (2000). Conversely, "[p]unitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436, 447 (1987) (citation omitted).

¶ 31 Additionally, in order for conduct to be considered reckless:

> *It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence* .... [emphasis supplied].
>
> The actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.

*Moran v. G. & W.H. Corson, Inc.*, 402 Pa.Super. 101, 586 A.2d 416, 423 (1991) (quoting Comments to Restatement (Second) of Torts § 500).

¶ 32 In the instant case, we agree with the trial court that Plaintiffs failed to demonstrate that the Hospital acted with reckless indifference or with knowledge that its conduct would increase the risk of harm to its patients. As support for its argument that the Hospital acted with reckless indifference, Plaintiffs argue that the Hospital was aware of but failed to uphold a standard of care that requires that the family physician of a patient treated in an emergency room be notified and provided with copies of relevant records relating to the patient's treatment. Plaintiffs also suggest that the Hospital intentionally created a system, namely, the assignment of a physician from the Hospital's daytime on-call list, which was designed to prevent the family physician of a patient from learning about the patient's emergency room treatment. Notwithstanding Plaintiffs' assertions, we agree with the trial court's conclusion that the Hospital's conduct, while · constituting an error of judgment, did not rise to the level of recklessness required for Plaintiffs to be entitled to punitive damages.

¶ 33 Plaintiffs provided no evidence that would suggest that the Hospital knew that its policy of assigning emergency room patients a physician from the Hospital's on-call list would increase substantially a risk of harm to the patient. Under the Hospital's policy, it was expected that the results of a patient's x-ray or other tests would be communicated to the patient by the emergency room physician, and that the patient then would comply with the physician's instructions that the patient follow up with his or her family physician. Furthermore, Plaintiffs failed to demonstrate that the Hospital's policy was intended to prevent a patient's family physician from being informed of or provided with records of the patient's care. Indeed, Hall was advised by the Hospital to follow up with her family physician. Thus, as Plaintiffs failed to demonstrate that the Hospital actually perceived that its policy increased substantially the risk of harm to its patients, we conclude that the trial court did not err in granting the Hospital's motion for non-suit with respect to Plaintiffs' punitive damages claim. In view of our disposition of Plaintiffs' first issue, we do not reach the merits of Plaintiffs' second issue, in which we were asked us to consider whether the appropriate remedy is a new trial limited to a determination of whether Plaintiffs are entitled to punitive damages, and, if so, in what amount.

¶ 34 For all of the reasons set forth above, we affirm the judgment entered upon the jury's verdict.

¶ 35 Judgment affirmed.