J-A14036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN EXPRESS NATIONAL BANK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS LOGOTHETIS | : | |
| | : | No. 2702 EDA 2022 |
| Appellant | | |

Appeal from the Judgment Entered December 6, 2022
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  CV-2020-008210

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED NOVEMBER 3, 2023**

Nicholas Logothetis ("Logothetis") appeals from the entry of judgment in favor of American Express National Bank ("AMEX"). We affirm.

Logothetis opened an account with AMEX in 2000.  At that time, AMEX issued him a credit card ending in 2006.  In 2015, AMEX issued Logothetis a second credit card ending in 3004.  Logothetis made monthly payments on the accounts for a period of time before stopping the payments.  In 2015, the account for the credit card ending in 2006 was closed with an outstanding balance exceeding $17,000.  In July 2020, the account for the credit card ending in 3004 was closed with an outstanding balance of $30,098.96.  In December 2020, AMEX commenced the present action to recover the unpaid credit card debt.  In its complaint, AMEX asserted a single claim for breach of contract and referenced only the account for the card ending in 3004.  The

complaint made no reference to the card ending in 2006. The matter proceeded to arbitration, resulting in an award in favor of Logothetis.

AMEX appealed the arbitration award to the trial court and the matter proceeded to a non-jury trial. Logothetis did not appear at trial; however, his counsel appeared on his behalf. AMEX presented one witness, Rebecca Muldoon ("Ms. Muldoon"), an assistant custodian of records who authenticated two exhibits introduced by AMEX. Exhibit A consisted of a standard Cardmember Agreement ("Agreement"). Ms. Muldoon testified that after opening an account, AMEX mails the Agreement and the credit card to the cardholder. Ms. Muldoon testified that the Agreement presented was the written contract that Logothetis agreed to when he initially used his credit card ending in 2006. The Agreement contains a "Promise to Pay" clause indicating that, by using the credit card, the account holder agrees to pay all charges incurred on the account for the card. In addition, AMEX introduced Exhibit B which consisted of monthly credit card statements showing Logothetis's use of the card ending in 2006. Ms. Muldoon explained that generating electronic monthly statements for the cardholders is AMEX's standard practice and part of its regular course of business.

Ms. Muldoon explained that the last four digits of an account number may change if a card is lost and replaced; however, the preceding numbers—which denote the actual account number—remain constant. Ms. Muldoon testified that, although the last four digits of Logothetis' account changed from

2006 to 3004 in 2015, the account remained unchanged. Ms. Muldoon also testified that the final payment AMEX received on the account was for $1,000 in July 2020. She explained that at the time of the last payment, the account had an outstanding balance of $47,743.88. Specifically, Ms. Muldoon explained that the credit card ending in 2006 had an outstanding balance of $17,644.92 and the credit card ending in 3004 had an outstanding balance of $30,098.96.

Logothetis contended that there were two separate AMEX accounts rather than merely one account with a replacement credit card. Logothetis argued that AMEX failed to prove the existence of any enforceable contract for the account ending in 3004 because the Agreement introduced at trial was for the account ending in 2006. Logothetis claimed that the account ending in 2006 is an unrelated account that is not pertinent to the instant litigation, which pertains solely to the account ending in 3004.

In May 2022, the trial court entered a non-jury verdict and a judgment in favor of AMEX.[1] The trial court determined that Logothetis had two separate accounts with AMEX, and that Logothetis breached his contract with AMEX for the account ending in 3004. Accordingly, the court awarded damages to AMEX

---

[1] Although the non-jury verdict was dated May 4, 2022, neither the verdict nor service of the verdict pursuant to Pa.R.C.P. 236 were entered on the docket on May 4, 2022. Instead, the docket indicates that the May 4, 2022 non-jury verdict as well as judgment for AMEX were both entered on the docket on May 18, 2022 (although the verdict was date-stamped May 19, 2022).

in the amount of $30,098.96. However, the trial court concluded that AMEX failed to meet its burden of proof with respect to the account ending in 2006.[2] Logothetis filed a motion for reconsideration and a notice of appeal.[3] This Court quashed the appeal, vacated the May 18, 2022 judgment, and directed that Logothetis be permitted ten days in which to file a post-trial motion.[4] Logothetis thereafter filed a post-trial motion, which the trial court denied. After the trial court denied the motion, Logothetis filed a timely notice of appeal. However, no judgment had yet been entered in the action. **See Hall v. Jackson**, 788 A.2d 390, 395 n.1 (Pa. Super. 2001) (explaining that an appeal properly lies from the entry of judgment, not from the denial of post-trial motions). Nevertheless, our appellate jurisdiction was perfected when judgment for AMEX was properly entered on the docket on December 6, 2022. **See** Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); **see also**

---

[2] AMEX has not cross-appealed the trial court's rulings regarding the account ending in 2006.

[3] The trial court later entered an order denying the motion for reconsideration.

[4] This Court was without jurisdiction to decide the appeal because the trial court entered judgment simultaneously with the non-jury verdict and before the ten-day period for filing post-trial motions following entry of the verdict had expired. **See Jenkins v. Robertson**, 277 A.3d 1196, 1199 (Pa. Super. 2022) (holding that where judgment is filed simultaneously with the verdict, the judgment is premature and therefore void, thereby leaving this Court without jurisdiction to address the appeal).

***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (holding that this Court's appellate jurisdiction is perfected where appellant prematurely appealed from an order denying post-trial relief and judgment was later entered). Both Logothetis and the trial court complied with Pa.R.A.P. 1925.

On Appeal, Logothetis raises the following issues for our review:

1. Whether the trial court erred and abused its discretion by issuing the written decision, dated May 4, 2022[,] in favor of [AMEX] and against [Logothetis], in the amount of $30,098.96.

2. Whether [AMEX] failed to establish the three (3) elements of a breach of contract action in Pennsylvania, as against [Logothetis], including but not limited to failing to establish:

    (a)    the existence of a contract by and between [AMEX] and [Logothetis], including its essential terms;

    (b)    a breach of a duty imposed by the contract; and

    (c)    resultant damages allegedly sustained by [AMEX].

3. Whether the trial court erred and abused its discretion by admitting into evidence at trial [AMEX's] Exhibit A, a generic credit card member agreement.

4. Whether [AMEX] failed to comply with federal law by providing a written contract governing the credit card purportedly issued by [AMEX] to [Logothetis] at the time of the trial and failed to post the alleged agreement conspicuously online so that it may be easily accessed, in violation of 15 U.S.C. [§§ 1601-1667f] Truth in Lending Act.

5. Whether [AMEX] failed to satisfy the requirements of the business record exception to the hearsay rule, Pa.R.C.P. 803(6)[,] and the uniform business records as evidence act, 42 Pa.C.S.A. [§] 6108.

6. Whether the trial court erred and abused its discretion by misapplying the business records exception to the hearsay rule

- 5 -

and admitting into evidence at trial [AMEX's] Exhibit B, consisting of monthly credit card statements.

Logothetis's Brief at 1-2 (issues reordered for ease of disposition, unnecessary capitalization, quotation marks, and emphasis omitted)

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Davis ex rel. Davis v. Gov't Employees Ins. Co.*, 775 A.2d 871, 873 (Pa. Super. 2001) (citations omitted). Moreover, where the trial court's findings are based upon the credibility of the witnesses, they are especially binding on appeal, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. *See Century Indemnity Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa. Super. 2017) (citations and quotation marks omitted).

In his first issue, Logothetis baldly claims that the trial court erred and abused its discretion by issuing a written decision in favor of AMEX. Initially, we must determine whether we may address this issue. Where, as here, a trial court directs a defendant to file a concise statement of matters complained of on appeal pursuant to Rule 1925(b), any issues not raised in that statement are waived. *See Korman Commercial Props. v. Furniture.com, LLC*, 81 A.3d 97, 102 (Pa. Super. 2013). Moreover, a concise

- 6 -

statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal. *See In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013). When, in a vague Rule 1925(b) statement, an appellant fails to identify the specific issue he wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in a Rule 1925(a) opinion. *See 202 Island Car Wash, L.P. v. Monridge Construction, Inc.*, 913 A.2d 922, 925 n.2 (Pa. Super. 2006).

Here, the trial court did not specifically address Logothetis's first issue in its opinion, noting that it found the issue to be a "general statement." *See* Trial Court Opinion, 1/3/23, at 3 n.3. Logothetis's vaguely worded first issue was not specific enough for the trial court to identify or address the precise issue that Logothetis wished to raise on appeal. Thus, we deem his first issue waived.

In his second issue, Logothetis claims that AMEX failed to establish the elements required for a breach of contract. Three elements are necessary to establish a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *See 412 N. Front St. Associates, LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016). For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain. *See Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006).

Implied contracts arise under circumstances which, according to the ordinary course of dealing and the common understanding of people, show a mutual intention to contract. *See Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). The intent of the parties to an implied-in-fact contract is inferred from their acts in light of the surrounding circumstances. *Id*. Contract interpretation is a question of law; therefore, our standard of review is *de novo*, and our scope of review is plenary. *McMullen v. Kutz*, 985 A.2d 769, 773 (Pa. 2009).

Logothetis argues that AMEX failed to prove the existence of an enforceable contract between himself and AMEX because the Agreement introduced at trial was not for the credit card ending in 3004, and instead pertained to the card ending in 2006. Logothetis asserts that AMEX's failure to produce the agreement for the card ending in 3004 at trial established a meritorious defense to the breach of contract claim. Logothetis also argues that AMEX failed to establish the second element for a breach of contract because Ms. Muldoon could not testify with certainty as to the exact date of the breach of the agreement for the card ending in 3004. Finally, Logothetis maintains that AMEX did not establish the third element of a breach of contract because it did not break down the damages allegedly sustained as a result of the breach (*i.e.*, principle, interest, penalties, *etc*.).

The trial court considered Logothetis's second issue and determined that it lacked merit. The court reasoned:

Every time a credit card account is approved with [AMEX], the Agreement is sent alongside of the physical credit card. [*See*] N.T., 4/29/22, [at] 7. The Agreement states the annual interest rates of the card, the annual fees of the card, as well as how the interest is calculated. [*See* AMEX's] Exhibit A, [at] 1, 5. It also states that when the account is used during a transaction, [the use of the card] signals an acceptance to the terms of the Agreement. [*See id*. at] 3[,] 10. The Agreement also notes the account holder's "Promise to Pay," which reads as follows:

> You promise to pay all charges, including charges you make, even if you do not present your card or sign for the transaction, charges that other people make if you let them use your Account, and charges that Additional Cardmembers make or permit others to make.

*See* [AMEX's] Exhibit A; *see also* N.T., 4/29/22, [at] 3.

For multiple years, [Logothetis] utilized the card and made payments in a timely manner, therefore indicating the acceptance of the terms of the Agreement. These terms of the Agreement were the same terms that were sent in the mail to [Logothetis] when he received his [AMEX] account ending in 3004. [*See*] N.T., 4/29/22, [at] 12.

* * * *

In this case, there was a cardholder who received a detailed agreement alongside his credit card, then used the credit card for years' worth of transactions, paid the card in a timely matter for years and clearly established an implied contractual relationship with [AMEX]. Therefore, the first element for a breach of contract issue is satisfied.

* * * *

As shown in [AMEX's] Exhibit A, the [A]greement spans over nine pages, with the first two pages displaying charts with bold letter headings which explained the agreements rates and fees, how the interest is calculated, and any penalties and fees that may be acquired by the cardholder. The remaining seven pages lay out a broken-down explanation of general instructions and various aspects of the cardholder obligations, with the title of each section

in bold lettering to its left. In addition to the clear language of the card agreement, [Logothetis] displayed his knowledge of how to properly use the credit card by his previous timely payments made over years of utilizing the credit card.

Whether or not [Logothetis] read the [A] greement section titled "Promise to [P]ay," he was aware that he must pay his monthly credit bill. By choosing to stop paying [AMEX], there was a clear breach of the contract that was made, and at one time followed, between [AMEX] and [Logothetis].

* * * *

The court found for [AMEX] and against [Logothetis] in the amount of $30,098.96. These damages were derived because of the unpaid balance on [his] account, which has a direct correlation to [his] breach of the [A]greement.

Therefore, because there was sufficient evidence to show that there was a contract between [AMEX] and [Logothetis,] including its essential terms, that there was a breach of duty imposed by the contract[,] and that there were resultant damages sustained by [AMEX], this court submits that [AMEX] did satisfy the necessary elements to establish a breach of contract . . ..

Trial Court Opinion, 1/3/23, at 5-8 (footnote, quotation marks, and unnecessary capitalization omitted).

We discern no abuse of discretion or error of law by the trial court in reaching its determination that AMEX produced sufficient evidence to establish an existing contract, breach of the contract, and resultant damages. The trial court credited Ms. Muldoon's testimony that AMEX sends the Agreement with every new credit card, which Agreement contains all rates, fees, interest, and penalties for the cardholder. Therefore, Logothetis would have received the Agreement when he received the credit card ending in 3004. Logothetis displayed his knowledge of the terms of the Agreement by making monthly

payments for the purchases he made on the account for the credit card ending in 3004. Additionally, Exhibit B showed payments made by Logothetis for purchases he made with the credit card ending in 2006, further demonstrating his understanding of his agreement to pay AMEX for purchases made on his credit card ending in 3004. Logothetis consistently made payments for the purchases he made on the card ending in 3004 until July 2020, when he abruptly stopped. This cessation of payment constituted a breach of the Agreement. Therefore, Logothetis's second issue merits no relief.

In his third issue, Logothetis contends that the trial court abused its discretion by admitting into evidence AMEX's Exhibit A, which is the Agreement. While this issue was raised by Logothetis in the concise statement and the statement of questions involved, Logothetis omitted any discussion of the issue in his brief. Thus, we deem the issue abandoned. ***See In Interest of T.Q.B.***, 286 A.3d 270, 273 (Pa. Super. 2022) (holding that issues raised in a Rule 1925(b) concise statement that are not developed in appellate brief are abandoned).

In his fourth issue, Logothetis contends that AMEX failed to comply with the Truth in Lending Act ("TILA"), ***see*** 15 U.S.C. §§ 1601-1667f, which requires, *inter alia*, that lenders disclose information about all charges and fees associated with a credit card. The trial court determined that the issue was waived because Logothetis did not raise it prior to or at trial. ***See*** Trial Court Opinion, 1/3/23, at 3 n.4.

Our review of the record discloses that Logothetis did not raise any issue regarding TILA in his pleadings or pretrial filings, and his counsel did not raise the issue at trial. Instead, Logothetis vaguely invoked TILA in his motion for reconsideration. **See** Motion for Reconsideration, 5/20/22, at 4 (merely stating that, pursuant to TILA there must be a written credit card agreement, and the agreement must be posted online). However, issues raised for the first time in a motion for reconsideration are waived and may not be considered on appeal. **See Prince George Center, Inc. v. U.S. Gypsum Co.**, 704 A.2d 141, 145 (Pa. Super. 1997) (declining to consider issues raised for the first time in a motion for reconsideration, noting that such issues are beyond the scope of this Court's jurisdiction). Thus, Logothetis failed to preserve this issue for our review.[5]

In his fifth issue, Logothetis claims that the trial court abused its discretion by admitting Exhibits A and B into evidence pursuant to the business records exception to the hearsay rule provided by Pa.R.E. 803(6) and the Uniform Business Records as Evidence Act provided by 42 Pa.C.S.A. § 6108 ("the Act").

Our standard of review of a trial court's decision to admit or exclude evidence is well-settled: "the admissibility of evidence is within the sound

---

[5] In its Rule 1925(a) opinion, the trial court took "judicial notice of the [AMEX] credit card [A]greement being conspicuously online for easy access per the TILA requirements." **See** Trial Court Opinion, 1/3/23, at 3 n.4.

- 12 -

discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law." ***Bayview Loan Servicing LLC v. Wicker***, 206 A.3d 474, 482 (Pa. 2019) (citation omitted). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but instead requires demonstration that the lower court's decision was a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous. ***See id***.

The business records exception has been incorporated into Pennsylvania law through the Act and Rule 803(6). ***See Bayview***, 206 A.3d at 483. The Act provides, in pertinent part, as follows:

> **(b) General Rule.**-A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." ***Boyle v. Steiman***, 631 A.2d 1025, 1032-33 (Pa. Super. 1993).

Rule 803(6) provides, in relevant part, as follows:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * * *

**(6) Records of a Regularly Conducted Activity**. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

The Act and Rule 803(6) substantially overlap in that both generally require that a custodian or other qualified witness testify that the record was made at or near the time of the event recorded and that the record was kept in the regular course of business. *Bayview*, 206 A.3d at 483. Moreover, both provide for the trial court to make a determination as to whether the circumstances surrounding the record justify its admission or indicate a lack of trustworthiness. *Id*.

- 14 -

Logothetis argues that the trial court should not have admitted Exhibits A and B under the Act or Rule 803(6) because AMEX failed to present evidence establishing that the documents were trustworthy and reliable. Logothetis points out that Ms. Muldoon reviewed the exhibits for the first time one week before trial. According to Logothetis, Ms. Muldoon admitted to not knowing AMEX's data compilation practices and could not confirm whether the records were created accurately or timely. Logothetis maintains that Ms. Muldoon had no knowledge of how AMEX keeps its computers, backs up its computers, whether the data in the computers was protected, or the working of its internet technology department. Logothetis further argues that Ms. Muldoon could not attest that the monthly statements were protected from corruption or hacking, or state how they were maintained or backed up.

The trial court considered Logothetis's fifth issue and determined that it lacked merit. The court reasoned:

> In this case, the records custodian clearly established the procedures of [AMEX] and how the process of these statements are made. [Ms. Muldoon] explained the time that it takes for the transactions to be posted to the account, that this information is then transmitted onto the statement, and that the statement is generated monthly and mailed to the cardholder as well as being available online. She is also able to review these statements whenever there is a dispute or case against [AMEX]. [***See***] N.T., 4/29/22, [at] 18, 20. She also explained that this is [AMEX's] regular course of business in generating electronic statements of their cardholders, and that this electronic statement generation is a regular practice of producing cardholders purchasing statements. [***Id***. at] 27. [Logothetis] never produced any source of information that could lead this court to find that [Ms. Muldoon,] who testified on behalf of [AMEX,] lacked trustworthiness.

> [With respect to] the . . . Act[,] . . . [a]s stated in the analysis above, the records custodian testified as to the records preparation and that it was made in the regular course of business of [AMEX] and made at or near the time of the cardholders purchasing act.
>
> Based on the above, this court respectfully submits that the requirements of the business records exception to the Hearsay rule as well as the . . . Act were satisfied.

Trial Court Opinion, 1/3/23, at 11-12 (unnecessary capitalization omitted).

We discern no abuse of discretion or misapplication of the law by the trial court in admitting Exhibits A and B pursuant to the Act and Rule 803(6). The trial court credited Ms. Muldoon's testimony that electronic statement generation is a standard practice, and that AMEX prepared the monthly statements, in the regular course of is business, at or near the time of the cardholder's purchases. The court further noted that Logothetis did not produce any evidence that Muldoon lacked trustworthiness. The fact that Muldoon did not personally create the Exhibits A and B, as well as the fact that she reviewed those exhibits for the first time one week before the trial, is immaterial. All that is required under the Act and Rule 803(6) is that a custodian or other qualified witness testify that the record was made at or near the time of the event recorded and that the record was kept in the regular course of business. *See Bayview*, 206 A.3d at 483; *see also In re Estate of Indyk*, 413 A.2d 371, 373 (Pa. 1979) (explaining that it is not essential for the admission of evidence under this section to produce either the person who made the entries in question or the custodian of the record at the time the

entries were made). Ms. Muldoon's testimony, as an assistant custodian of records for AMEX, satisfied these requirements. Thus, we discern no abuse of discretion or misapplication of the law in relation to the trial court's determination that Exhibit A and B were admissible under the Act and Rule 803(6). Accordingly, Logothetis's fifth issue merits no relief.

In his sixth issue, Logothetis again argues that the trial court abused its discretion by determining that Exhibit B was admissible under the business records exception, albeit on a different basis. Logothetis claims that the exception does not apply because Exhibit B was prepared in anticipation of litigation.

Initially, we must determine whether Logothetis preserved this issue for our review. In order to preserve an evidentiary issue for appellate review, a party must make a timely and **specific** objection at the appropriate stage of the proceedings before the trial court. **See Thompson v. Thompson**, 963 A.2d 474, 475-76 (Pa. Super. 2008). On appeal, this Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. **See id**.

In his appellate brief, Logothetis contends that Exhibit B was prepared in anticipation of litigation and is therefore not subject to the business records exception. Logothetis has not directed this Court to the place in the record where this issue was preserved for our review. **See** Pa.R.A.P. 2117(c) (providing that "[w]here under the applicable law an issue is not reviewable

on appeal unless raised or preserved below, the statement of the case shall also specify . . . the manner in which, the questions sought to be reviewed were raised . . . [and] the method of raising them"); **see also** 2119(e) (providing that "[w]here under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto. . ..").

Nevertheless, our review of Logothetis's pleadings and pretrial filings discloses that the issue was not raised in those filings. Our further review of the record discloses that, although Logothetis' counsel objected to Exhibit B at trial, he did not object on the basis that the exhibit was prepared in anticipation of litigation. Instead, counsel objected to Exhibit B on the basis that Ms. Muldoon had not testified that she had knowledge of the method of preparation and maintenance of AMEX's records, or record keeping practices. **See** N.T., 4/29/22, at 26. Thus, as Logothetis did not raise any objection in the court below that Exhibit B was prepared in anticipation of litigation, he failed to preserve the issue for our review. Accordingly, Logothetis's final issue is waived.

As none of Logothetis's issues merit relief, we affirm the judgment in favor of AMEX.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/03/2023