J-A28005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID CREW, ADMINISTRATOR OF THE ESTATE OF ESSIE CREW, DECEASED AND IN HIS OWN RIGHT | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| PENN PRESBYTERIAN MEDICAL CENTER AND TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA AND PENN HOSPICE AT RITTENHOUSE AND PENN MEDICINE RITTENHOUSE | : : : : : : | |
| Appellees | : | No. 869 EDA 2017 |

Appeal from the Judgment Entered February 15, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  June Term, 2014 No. 0162

BEFORE:  GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 09, 2018**

Appellant, David Crew, Administrator of the Estate of Essie Crew, Deceased and in his own right, appeals from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellees, Penn Presbyterian Medical Center and Trustees of the University of Pennsylvania and Penn Hospice at Rittenhouse and Penn Medicine Rittenhouse, in this medical malpractice action.  We affirm.

In its opinion filed on June 30, 2017, the trial court fully and correctly sets forth the relevant facts and procedural history.  Therefore, we have no need to restate them.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEES' MOTION FOR PARTIAL SUMMARY JUDGMENT[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN PERMITTING THE ADMISSION OF THE CONSENTS FOR TREATMENT INTO EVIDENCE IN A MEDICAL MALPRACTICE TRIAL AT THE TIME OF TRIAL[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN NOT PERMITTING THE CONTENTS OF FEDERAL AND STATE LAW, REGULATIONS AND GUIDELINES TO BE USED AT TRIAL[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN ALLOWING TESTIMONY REGARDING SETTLEMENT[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAIL[ING] TO CHARGE ON HARM OF MEDICAL NEGLIGENCE REGARDING FAILURE TO EAT OR PROVIDE HYDRATION[?]

(Appellant's Brief at 6).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it

- 2 -

misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hospital*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations and quotation marks omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment,

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will **bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action** or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie*

- 3 -

cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted) (emphasis added).

After a thorough review of the record, briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Ellen Ceisler, we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (***See*** Trial Court Opinion, filed June 16, 2017, at 4-10) (finding: court properly granted summary judgment in favor of Appellees Penn Presbyterian Medical Center, Trustees of University of Pennsylvania, and Penn Medicine Rittenhouse as to Appellant's corporate negligence claim in Count II; in support of his corporate negligence claim, Appellant offered reports of two medical experts, Erane T. Allen, MPA, RN, CDONA, CNHA, and Dr. Perry Starer, M.D.; neither expert offered opinion regarding whether Appellees met relative standards of care; Appellant's failure to provide proper expert testimony precluded him from establishing existence of genuine issue of material fact as to his corporate negligence claim against Appellees, Penn Presbyterian Medical Center, Trustees of University of Pennsylvania, and Penn Medicine Rittenhouse; Dr. Starer's report, however, created genuine issue of material fact concerning whether Appellee Penn Hospice at

Rittenhouse was liable for corporate negligence; court's granting summary judgment in favor of Appellee Penn Hospice on Appellant's Count II corporate negligence claim, however, constituted harmless error; court denied Appellees' motion for summary judgment as to Appellee Penn Hospice on Count I of Appellant's complaint; Count I contained averments which sounded in both vicarious liability and corporate negligence, and were substantially same as those in Count II; although court granted summary judgment as to corporate negligence claims in Count II, court did not foreclose Appellant's ability to have jury determine whether Appellee Penn Hospice was liable for corporate negligence; moreover, even if Count I did not allege corporate negligence claim against Appellee Penn Hospice, jury concluded treatment Decedent received at Appellee Penn Hospice satisfied relevant standard of care; court properly granted summary judgment as to Appellant's Count I negligence claim in favor of three Appellees, Penn Presbyterian Medical Center, Trustees of University of Pennsylvania, and Penn Medicine Rittenhouse; concerning Appellant's claim of vicarious liability in Count I, Appellant offered no evidence to support his assertion employees or agents of Appellees Penn Presbyterian and Penn Medicine Rittenhouse treated Decedent in negligent manner; evidence Appellant offered failed to establish genuine issue of material fact regarding whether Appellee Trustees was vicariously liable for alleged negligent care Decedent received; Appellant provided no evidence of Appellee Trustees' level of control over medical

personnel at Appellee Penn Hospice who treated Decedent; webpage printouts Appellant presented failed to establish Appellee Trustees managed and oversaw Appellee Penn Hospice, because webpage failed to reflect status of relationship between Appellee Trustees and Appellee Penn Hospice in 2012, when Appellee Penn Hospice treated Decedent; further, although Dr. Starer based his claim that Appellee Trustees employed Dr. Joshua Uy, Decedent's treating physician, on Dr. Uy's deposition testimony, Appellant failed to docket as independent filing, or submit as exhibit, Dr. Uy's deposition transcript; therefore, Dr. Starer based his opinion as to Dr. Uy's employment on material outside record; therefore, no genuine issue of material fact supported Appellant's claim of vicarious liability as to Appellee Trustees; to extent Appellant challenges court's grant of summary judgment regarding corporate negligence claim in Count I, Appellant's corporate negligence claim fails for same reasons as Count II corporate negligence claim).[1]  The record supports the court's rationale, and we see no reason to

_____

[1] We part with the summary judgment court's decision to the extent the court states Appellant waived his summary judgment challenge on appeal for failure to file a post-trial motion.  Here, Appellant was not required to file a post-trial motion to preserve his summary judgment claim on appeal.  ***See*** Pa.R.C.P. 227.1(c), *Note* (stating: "A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment…").  In any event, Appellant argued in his post-trial motion that he was entitled to relief for several reasons, including, the summary judgment court erred in granting partial summary judgment in favor of Appellees and various trial court errors.  Therefore, even if Appellant had been required to include his summary judgment
*(Footnote Continued Next Page)*

disturb it.

Our well-established standard of review of a trial court's admission or exclusion of evidence is very narrow:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa.Super. 2007), *appeal denied*, 595 Pa. 708, 938 A.2d 1053 (2007).

The admissibility of a settlement agreement is governed by 42 Pa.C.S.A. § 6141:

> **§ 6141. Effect of certain settlements**
>
> **(a) Personal injuries.**—Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.
>
> \*    \*    \*

*(Footnote Continued)* ────────────

challenge in a post-sentence motion, Appellant would have properly preserved his claim for appeal.

**(c)   Admissibility in evidence.**—Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) and (b) shall not be admissible in evidence on the trial of any matter.

42 Pa.C.S.A. § 6141(a), (c).  The Pennsylvania Rules of Evidence provide, in relevant part, as follows:

**Rule 408.  Compromise Offers and Negotiations**

**(a) Prohibited Uses**.  Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

Pa.R.E. 408(a).  *See also* Comment to Pa.R.E. 408 (stating: "Pa.R.E. 408 is consistent with 42 Pa.C.S. § 6141").

After a thorough review of the record, briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Marlene F. Lachman, we conclude Appellant's remaining issues merit no relief.  The trial court opinion comprehensively discusses and properly disposes of the questions presented.  (*See* Trial Court Opinion, filed June 30, 2017, at 7-26) (finding: **(2)** "consent to hospice care" form has no relation to "informed consent" form, because former does not identify risks of proposed surgical

procedure; "consent to hospice care" form indicates consenter's understanding that treatment rendered in hospice will be palliative rather than curative; in other words, hospice care consent form affirmatively advised Decedent she would receive no curative treatment while she was under hospice care; furthermore, Appellant's counsel opened door to introduction of hospice care consent form, when counsel stated Decedent's family did not intend Decedent to die while in Appellee Penn Hospice's care; **(5)** despite court's contrary ruling, Dr. Starer testified on direct examination that failure to provide nutrition and hydration caused Decedent's death; Dr. Starer explained that Decedent's loss of skin integrity, which ultimately contributed to her death, was due to her deficient nutrition; therefore, Appellant cannot demonstrate he suffered prejudice as result of court's ruling prohibiting Dr. Starer's testimony on Appellee Penn Hospice's failure to provide Decedent nutrition and hydration; **(4)** Appellee Penn Hospice did not introduce evidence of Appellant's settlement agreement with Park Pleasant, and jury heard no testimony regarding that settlement; Appellee Penn Hospice did cross-examine Dr. Starer about his statements in his medical expert report concerning negligent care Decedent received at Park Pleasant; Appellee Penn Hospice was permitted to cross-examine Dr. Starer on his expert report opinions; failure to permit Appellee to cross-examine Dr. Starer on his opinion as to Park Pleasant's negligent care would have given jury false impression that Dr. Starer opined only Appellee Penn

Hospice was responsible for Decedent's death; **(3)** in his post-trial motion and brief, Appellant failed to identify specific federal and state laws, regulations, and guidelines court should have allowed; while Appellant cited in his post-trial filings "Federal Hospice Regulations, 42 CFR 418," he failed to identify which individual provisions of regulation were at issue; similarly, Appellant only generally referenced 1,000-page federal Omnibus Budget Reconciliation Act of 1987 ("OBRA") and OBRA regulations; further, Appellant referenced no state laws, regulations, or guidelines in his post-trial filings; concerning Appellant's related motion *in limine*, Appellant mentioned 42 CFR 418 *et seq.* and 42 CFR 418.56 and conceded 42 CFR 483 was inapplicable; in post-trial filings, Appellant referenced his cross-examination of Barbara Felder, certified nurse practitioner who worked at Appellee Penn Hospice, on her knowledge of 42 CFR 418.81.1-116, regarding hospice responsibility to provide food and dietary counseling; trial court correctly determined cross-examination of Ms. Felder on need to give Decedent food and water was irrelevant because Decedent's treatment plan was silent on dietary issues and Decedent did not require forced nutrition and hydration). The record supports the trial court's rationale, and we see no reason to disturb it. Accordingly, we affirm on the bases of the trial courts' opinions.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/9/18

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| DAVID CREW, ADMINISTRATOR OF THE ESTATE OF ESSIE CREW, DECEASED AND IN HIS OWN RIGHT<br>　　　　Plaintiff-Appellant | : : : : : : : : : : | **SUPERIOR COURT**<br>**869 EDA 2017**<br><br>**COURT OF COMMON PLEAS**<br>**140601612** |
| v. | : : : | |
| PENN PRESBYTERIAN MEDICAL CENTER, et al.<br>　　　　Defendants-Appellees | : : : : | |

**OPINION**

**ELLEN CEISLER, J.**　　　　　　　　　　　**DATE: June 15, 2017**

---

## I.　FACTS AND PROCEDURAL HISTORY

This Court adopts the facts and procedural history articulated by the Honorable Marlene Lachman in Her Honor's opinion addressing Plaintiff-Appellant David Crew's ("Appellant") appeal in this matter.

## II.　DISCUSSION

This Court respectfully requests that the instant appeal be quashed or denied for the following reasons:

1. Appellant failed to docket a post-trial motion in the above-captioned matter and has accordingly waived all potential appellate issues;

Crew Etal Vs Penn Presbyterian Medical Cente-OPFLD

1



14060161200191

2. In his Brief in Support of Motion for Post-Trial Relief, Appellant failed to explain, or address in any manner, his basis for claiming that this Court erred by granting summary judgment regarding his "Breach of Oral Contract" claim in favor of Penn Presbyterian Medical Center ("Penn Presbyterian"), the Trustees of the University of Pennsylvania ("Trustees"), Penn Hospice at Rittenhouse ("Penn Hospice"), and Penn Medicine Rittenhouse; therefore, Appellant has waived his ability to raise this issue on appeal;

3. Penn Presbyterian, the Trustees, and Penn Medicine Rittenhouse were entitled to summary judgment regarding Appellant's "corporate negligence" claims from Count II of his Sixth Amended Complaint;

4. This Court committed harmless error in granting summary judgment in favor of Penn Hospice as to Appellant's "corporate negligence" claims from Count II of his Sixth Amended Complaint;

5. Penn Presbyterian, the Trustees, and Penn Medicine Rittenhouse were entitled to summary judgment regarding Crew's "negligence" claims from Count I of his Sixth Amended Complaint.

Preliminarily, this Court maintains that Appellant has waived all potential appellate issues, by virtue of his decision to docket a post-trial motion in only the case with which the above-captioned matter had been consolidated, but not in the above-captioned matter itself. Pursuant to the Pennsylvania Rules of Civil Procedure, "Post-trial motions shall be filed within ten days after [] verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial." Pa. R.C.P. 227.1(c). Accordingly, "parties [must] file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." L.B. Foster Co. v. Lane Enterprises, Inc., 710 A.2d 55 (Pa. 1998). Separately, it is well-settled that, though two or more suits maybe be consolidated for a variety of reasons, such consolidation cannot be deemed "complete," in that "the actions lose their separate identities and become a single action... unless the actions involve the *same parties*, subject matter, issues, and defenses." Kincy v. Petro, 2 A.3d 490, 494 (Pa. 2010) (emphasis added). Where consolidation is not complete in nature, it does "not result in merger of the pleadings, or the loss of the separate identities of the actions." Id. at 495.

2

In the instant scenario, Appellant filed two suits: One, docketed under Case ID #140400958, in which he sued Park Pleasant Health Care Facility and Park Pleasant, Inc., and the other, docketed under Case ID #140601612, in which he sued Appellees; the second case is the source of this Court's order that Appellant currently seeks to challenge on appeal. Appellant subsequently file a Motion to Consolidate, which was granted by the Honorable Lisa Rau on March 12, 2015, who specifically consolidated these two actions "for purposes of discovery and trial under the caption of Crew v. Park Pleasant Health Care Facility et al., April Term, 2014, No. 00958." Rau Order, 3/12/15 at 2. The consolidated matters proceeded to trial, and Appellant thereafter filed his Motion for Post-Trial Relief in his case against the Park Pleasant entities, but not in this matter. Given that each of Appellant's two suits were lodged against entirely distinct and separate parties, the Park Pleasant entities in the former and Appellees in the latter, complete consolidation of these matters did not occur, meaning that Appellant was thus required to file post-trial motions *in both cases* in order to preserve any potential issues for appellate review. Thus, as Appellant only filed a post-trial motion of record in his Park Pleasant action, but not in his case against Appellees, he has consequently waived his right to attack this Court's disposition of Appellees' Motion for Partial Summary Judgment via an appeal to the Superior Court.

Assuming *arguendo* that Appellant has not waived all potential appellate issues, his request for appellate relief regarding this Court's aforementioned partial summary judgment ruling is still entirely without substantive merit. Under Pennsylvania law, a trial court should grant a party's motion for summary judgment when "there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa. R.C.P. 1035.2(1). In addition, such a motion must be granted in situations where "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury," id. at 1035.2(2), as such a failure "establishes the entitlement of the moving party to judgment as a matter of law." Young v. Com., Dep't of Transp., 744 A.2d 1276, 1277 (Pa. 2000) (*citing* Ertel v. Patriot-News Co., 674 A.2d 1038, 1042 (Pa. 1996)). That having been said, the court's sole function when addressing a motion for summary judgment is to determine whether there is a genuine issue of material fact to be tried, rather than to decide issues of fact. Fine v. Checcio, 870 A.2d 850, 862 (Pa. 2005). To that end, a trial court must resolve all doubts against

3

the movant, examining the case record in the light most favorable to the nonmoving party, and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." Id. at 857 (citation omitted).

In this matter, this Court granted in part and denied in part Appellees' joint Motion for Partial Summary Judgment on January 27, 2016. Specifically, this Court granted said Motion: 1. As to all appellees regarding the "corporate negligence" claims contained in Count II of Plaintiff's Sixth Amended Complaint; 2. As to all appellees regarding the "Breach of Contract Oral Agreement" claims from Count III of Plaintiff's Sixth Amended Complaint; and 3. As to all appellees except Penn Hospice regarding the "negligence" claims included in Count I of Appellant's Sixth Amended Complaint)[1] Here, Appellant has preserved his ability to challenge this ruling on appeal only as it relates to his corporate negligence and negligence claims. See Appellant's Post-Trial Motion at 6-21; Appellant's Brief in Support of Motion for Post-Trial Relief at 5-21.[2] Both of these challenges are addressed *infra*, in *seriatim*.

First, this Court properly granted summary judgment in favor of Penn Presbyterian, the Trustees, and Penn Medicine Rittenhouse regarding Appellant's "corporate negligence" claims from Count II of his Sixth Amended Complaint. Corporate negligence is a doctrine first recognized by the Pennsylvania Supreme Court in Thompson v. Nason Hosp., 591 A.2d 703 (Pa. 1991), and cautiously expanded by our appellate courts since then, through which hospitals and certain, other medical entities "can be held liable if [they] breach[] the non-delegable duty of care owed directly to [a] patient to ensure 'the patient's safety and well-being'" while under the entity's care.

---

[1] This Court's January 27, 2016 order contained a typo, in that said order stated that summary judgment was granted in favor of Penn Hospice regarding Count I, rather than Penn Medicine Rittenhouse (as had actually been This Court's intent); however, this error was noticed and rectified by the parties and Judge Lachman, who proceeded with the understanding that Plaintiff could still pursue his Count I-based claim against Penn Hospice. See Trial Worksheet at 1 ("*The parties agree that the correct defendant was Penn Hospice—Rittenhouse.").

[2] Though Appellant apparently also wishes to dispute the propriety of this Court's decision to grant summary judgment regarding his "Breach of Oral Contract" claims against Appellees, he neglected to address that matter in his Brief in Support of Motion for Post-Trial Relief. See Statement of Errors at 4; Brief in Support of Motion for Post-Trial Relief at 1-31. Consequently, he has waived this issue. See Am. Future Sys., Inc. v. BBB, 872 A.2d 1202, 1215 (Pa. Super. Ct. 2005) (citations omitted) ("[O]nly those issues raised in a post-trial motion which are briefed or argued before the court hearing the motion will be considered preserved for appellate review.").

4

Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 601 (Pa. 2012) (*citing* Thompson, 591 A.2d at 707). Under this theory, liability can attach where such an organization breaches its: "(1) [] duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) [] duty to select and retain only competent physicians; (3) [] duty to oversee all persons who practice medicine within its walls as to patient care; [or] (4) [] duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients." Thompson, 591 A.2d at 707.

> Because the duty to uphold the proper standard of care runs directly from the hospital to the patient, an injured party need not rely on the negligence of a third-party, such as a doctor or nurse, to establish a cause of action in corporate negligence. Instead, corporate negligence is based on the negligent acts of the institution. A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts.

Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997) (*citing and quoting* Moser v. Heistand, 681 A.2d 1322, 1325 (Pa. 1996)) (citations and punctuation omitted).

When pursuing a corporate negligence claim, it is well-settled that "a plaintiff must produce expert testimony to establish that the [corporate entity] deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff," unless, that is, the putative negligence is "obvious." Welsh, 698 A.2d at 585. In general, expert testimony pertaining to any discipline can only be provided by a properly-qualified witness who has "scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson... [which] will help the trier of fact to understand the evidence or to determine a fact in issue[,] and [has used] methodology [that] is generally accepted in the relevant field." Pa. R.E. 702(a)-(c).

Here, Appellant offered reports from two medical professionals: 1. Erane T. Allen, MPA, RN, CDONA, CNHA; and 2. Dr. Perry Starer, M.D. *See* Motion for Partial Summary Judgment, Exs. C and E. While the former discussed the care provided to Essie Crew at Park Pleasant Nursing Home, and the latter examined Essie Crew's treatment at both Park Pleasant and Penn Hospice at Rittenhouse, *neither* Ms. Allen *nor* Dr. Starer offered opinions regarding whether or not Penn Presbyterian, the Trustees, or Penn Medicine Rittenhouse had treated Essie Crew in a manner that comported with these entities' respective corporate standards of care. *See* id. Given that the

5

existence of corporate negligence in this matter was undoubtedly far from obvious, Appellant's failure to provide proper expert testimony meant that he could not establish that there was a genuine issue of material fact as to this claim against these three entities. As such, this Court appropriately granted summary judgment in favor of Penn Presbyterian, the Trustees, and Penn Medicine Rittenhouse regarding Appellant's corporate negligence claims from Count II of his Sixth Amended Complaint. *See* Gruenwald v. Advanced Computer Applications, Inc., 730 A.2d 1004, 1009 (Pa. Super. Ct. 1999) (*quoting* Johnson v. Harris, 615 A.2d 771, 775 (Pa. Super. Ct. 1992)) (punctuation omitted) ("[A] party responding to a motion for summary judgment may not rest on pleadings; rather, it is his responsibility to show that a genuine issue of fact exists by affidavit or otherwise.").

By contrast, and upon further review of Dr. Starer's report, it is apparent that this report can be reasonably construed as creating a genuine issue of material fact regarding whether Penn Hospice committed corporate negligence in connection with Essie Crew's medical treatment at its facility. *See* Motion for Partial Summary Judgment, Ex. E at 1-3, 6. However, as will be explained *infra*, said error was ultimately harmless and thus does not provide a valid basis for granting Appellant's request for a new trial. In situations where a party moves for a new trial, the trial court must apply a two-step test:

> First, the court must determine whether, colloquially speaking, a "mistake" (or mistakes) was made at trial. Second, the court decides whether the mistake (or mistakes) is sufficient basis for granting a new trial. The first decision—whether a mistake was made—may involve factual, legal, or discretionary matters. However, the second and ultimate decision—whether to grant a new trial—is always a discretionary matter because it requires consideration of the particular circumstances of the case.

Morrison v. Com., Dep't of Pub. Welfare, Office of Mental Health (Woodville State Hosp.), 646 A.2d 565, 571 (Pa. 1994) (footnote omitted). When reviewing the issues raised by a litigant in their post-trial motion, the trial court must remain cognizant that "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; [rather,] the moving party must demonstrate… that he or she has suffered prejudice from the mistake." Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1122 (Pa. 2000)). Thus, if an error was committed, but did not work prejudice upon the movant, said error must be deemed harmless and cannot serve as the basis for granting their desired relief. Id.

In this matter, and as noted above, this Court denied the Motion for Partial Summary Judgment as to Penn Hospice regarding Count I of Appellant's Sixth Amended Complaint. This Count contains a confused and extremely lengthy mishmash of averments that sound in both vicarious liability and corporate negligence, ones which are substantially duplicative of those in Count II. *Compare* Sixth Amended Complaint at 3-18 (Count I) with id. at 18-31 (Count II). Thus, though this Court granted summary judgment as to Count II's corporate negligence claims, Penn Hospice was not given similar relief regarding Count I, meaning that this ruling did not ultimately foreclose upon Appellant's ability to have the jury decide whether that entity had been corporately negligent. *See* Verdict Sheet at 1 (asking the jury to determine if Penn Hospice's handling of Essie Crew had "[fallen] below the applicable standard of care. In other words, was [Penn Hospice] negligent?"). Moreover, even if one were to counterfactually construe Count I as articulating *only* a vicarious liability claim, it remains the jury concluded the treatment received by Essie Crew at Penn Hospice had satisfied the relevant standard of care. Id. Given this, the jury would have had no factual basis for finding that Essie Crew had been harmed at Penn Hospice by the kind of systemic, broad-based problems which would support a corporate negligence claim. *Cf.* Thompson, 591 A.2d at 707 (discussing duties that, if not properly fulfilled, can result in corporate negligence). Consequently, this Court's decision to grant summary judgment in favor of Penn Hospice as to Appellant's corporate negligence claims in Count II of his Sixth Amended Complaint was harmless error, at most, and was not grounds for granting Appellant's request for a new trial.

In addition, this Court properly granted summary judgment in favor of Penn Presbyterian, the Trustees, and Penn Medicine Rittenhouse regarding Appellant's "negligence" claims from Count I of his Sixth Amended Complaint. To reiterate what was noted *supra*, Appellant confusingly chose to draft Count I so that the averments contained therein sound in both corporate negligence and vicarious liability. *See* Sixth Amended Complaint at 3-18. To the extent that Appellant challenges this Court's decision regarding any of his Count I-based corporate negligence claims against these appellees, he is not entitled to appellate relief due to his aforementioned failure to offer expert testimony in support of such allegations.

7

With regard to Count I's vicarious liability-based allegations, his request for appellate relief is also without merit.

> Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it. Once the requisite relationship (*i.e.,* employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the ability to pay.

Scampone, 57 A.3d at 597 (citations and punctuation omitted). Here, Appellant offered no evidence whatsoever to support his assertions that employees or agents of either Penn Presbyterian or Penn Medicine Rittenhouse treated Essie Crew in a negligent manner, meaning that those entities were entitled to summary judgment regarding Count I's vicarious liability claims. As for the Trustees, the evidence presented by Appellant failed to create a genuine issue of material fact regarding whether they were vicariously liable for any of the allegedly negligent medical care given to Essie Crew. As has long been understood by Pennsylvania courts, "the classic common law test of the employer/employee relationship is that an entity is an employer where it maintains control or the right to control the work to be done and the manner of doing it." Kiehl v. Action Mfg. Co., 535 A.2d 571, 573 (Pa. 1987) (*citing* Venezia v. Philadelphia Electric Co., 177 A. 25 (Pa. 1935)). "Where a parent/subsidiary relationship is established the question of which corporation has control over an employee is determined by focusing on *the functions performed by each corporation and by the employee* in addition to other indicia of control." Mohan v. Continental Distilling Co., 222 A.2d 876, 879 (Pa. 1966) (emphasis added). Thus, an agency-type relationship is not *automatically* deemed to exist between the corporate entity at the top of the pyramid and those laboring at its component organizations; rather, it must be established on a case-by-case basis whether a given worker or group of workers are actually employees of their parent corporation. *See* Botwinick v. Credit Exch., Inc., 213 A.2d 349, 353–54 (Pa. 1965) (citations omitted);[3] Barnes v. Alcoa, Inc., 145 A.3d 730, 735 (Pa. Super. Ct. 2016).[4] Thus, unless the answer

---

[3] Neither the similarity of names between the parent and subsidiary corporation, nor the total ownership of the stock of the subsidiary by the parent[,] nor the fact that a single individual is the active chief executive of both corporations will per se justify a court in piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence.

[4] [T]he fact a parent company's name is listed on an employee's check is not evidence the employee is employed by the parent company instead of the subsidiary. Instead, [a plaintiff must]... show [the parent company] had the power

8

to this question of agency is "yes," the parent corporation cannot be susceptible to a claim based upon vicarious liability.

Here, Appellant stated that three pieces of evidence supported his vicarious liability claim against the Trustees: 1. Appellees' Amended Answer, in which they admitted that "Penn Hospice at Rittenhouse is the inpatient unit for Wissahickon Hospice, which is a wholly owned subsidiary of the Trustees"; 2. Various webpage printouts, which showed that the Trustees "is the governing board of the Penn Presbyterian Medical Center which manages, oversees[,] directs[,] and/or operates the Penn Presbyterian Medical Center, Penn Hospice at Rittenhouse and Penn Medicine at Rittenhouse; and 3. Dr. Starer's expert report, which established that Dr. Joshua Uy, M.D. was employed by the Trustees and treated Essie Crew during her stay at Park Pleasant Nursing Home. *See* Answer to Motion for Partial Summary Judgment at 6-7, 10; id., Exs. E, G, and H. None of these, however, are sufficient enough to establish that a genuine issue of material fact exists regarding whether vicarious liability might attach to the Trustees in this matter. First, though a parent/subsidiary relationship of some sort undisputedly exists between the Trustees and Penn Hospice, it remains that Appellant provided *no evidence whatsoever* about the former's level of control (or lack thereof) over the medical professionals at the latter who allegedly gave Essie Crew deficient medical care. Second, the aforementioned printouts, which Appellant clearly obtained just before he responded to the Motion for Partial Summary Judgment in January 2016, were not verified as accurately representing those websites as they existed in 2012, when Appellees were caring for Essie Crew, and thus could not be used by this Court as a factor in her analysis. *See* Wheeler v. Johns-Manville Corp., 493 A.2d 120, 122 (Pa. Super. Ct. 1985) (*citing* Irrera v. SEPTA, 331 A.2d 705 (Pa. Super. Ct. 1974).[5] Finally, Dr. Starer's claim that Dr. Uy was employed by the Trustees was based off of information Dr. Uy allegedly divulged while being deposed. *See* Answer to Motion for Partial Summary Judgment, Ex. E at 6. As neither Appellant nor Appellees docketed this deposition's transcript as an independent filing or as an exhibit, Dr. Starer's statement regarding Dr. Uy's relationship with the Trustees rested upon evidence existing outside of the case

and authority to direct and control [an individual's] actions in order for him to be deemed an employee [of the parent company].

[5] Moreover, neither of these printouts addressed whether or not the Trustees exert control over those who work at its subsidiaries.

9

record, rendering it an unsupported allegation that could not create a genuine issue of material fact. *See* <u>Krause v. Great Lakes Holdings, Inc.</u>, 563 A.2d 1182, 1186 (Pa. Super. Ct. 1989) (*citing* <u>Thorsen v. Iron and Glass Bank</u>, 476 A.2d 928, 930 n. 2 (Pa. Super. Ct. 1984)) ("Depositions which are not filed and made a part of the record cannot be considered on a motion for summary judgment."). Consequently, this Court appropriately granted Appellees' Motion for Partial Summary Judgment as to Appellant's "negligence" claims from Count I of his Sixth Amended Complaint.

## III.   CONCLUSION

For the aforementioned reasons, this Court respectfully requests that the instant appeal be quashed or denied.

BY THE COURT:

_____
                                                                              J.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| David Crew, Administrator of the Estate of | : | |
| Essie Crew, deceased and in his own right | : | June Term, 2014 |
| | : | |
| vs. | : | |
| | : | No. 01612 |
| Penn Presbyterian Medical Center, | : | |
| Trustees of the University of Pennsylvania, | : | |
| Penn Hospice at Rittenhouse, and | : | Superior Court Docket |
| Penn Medicine Rittenhouse | : | No. 869 EDA 2017 |

## OPINION

Lachman, J.                                                             June 30, 2017

### I. Factual and Procedural Background

On March 16, 2012, the Plaintiffs Decedent Essie Crew was admitted to Park Pleasant Health Care Facility for nursing care, rehabilitation, physical, occupational, and speech therapy. At the time of her admission, a Park Pleasant nurse noted that Ms. Crew's skin was intact. Around April 23, 2012, Ms. Crew began to experience a loss of skin integrity. On or before May 10, 2012, Ms. Crew developed sacral wounds, bilateral contractures of her upper and lower extremities, and urinary tract infections.

Ms. Crew remained in Park Pleasant until June 14, 2012, when she was admitted to the Penn Presbyterian Medical Center. There she was diagnosed with a perforated gastric ulcer, a pressure ulcer, tarry stools which tested positive for blood, extended spectrum Beta-Lactamase infection in urine, and a fractured finger, among other conditions.

From June 14, 2012 to July 6, 2012, Ms. Crew received treatment and care at Penn Presbyterian for a perforated gastric ulcer and pressure ulcers. She was released from Penn Presbyterian Hospital in fair condition.

Crew Etal Vs Penn Presbyterian Medical Cente-OPFLD

1

1406016120O196

From July 6, 2012 until August 6, 2012, Ms. Crew was admitted to Penn Hospice at Rittenhouse. Ms. Crew refused to eat and she was not forced-fed by the hospice. Due to her lack of nutrition and hydration, she developed pressure sores. She died on August 6, 2012.

Plaintiff is the administrator of the estate of Essie Crew, and was her son. He first filed suit against Park Pleasant Health Care Facility and Park Pleasant Inc., in this court at April Term 2014, No. 00958. Two months later, he filed suit against Penn Presbyterian Medical Center, the Trustees of the University of Pennsylvania, Penn Hospice at Rittenhouse, and Penn Medicine Rittenhouse, in this court at June Term 2014, No. 1612. The two actions were consolidated for purposes of discovery and trial, with the Park Pleasant case being the lead case. The case against the Park Pleasant defendants was settled before this case went to trial.

An Order dated January 27, 2016 by the Honorable Ellen Ceisler granted in part the Penn Defendants' motion for partial summary judgment. The order created confusion as to the identity of the proper defendant at trial. It dismissed the case against all of the Penn Defendants except for Penn Medicine at Rittenhouse. The attorney for the Penn Defendants asserted at trial that "Penn Medicine at Rittenhouse" is not a legal entity and is only a descriptive name for a location of some of Penn's medical facilities. Penn's attorney graciously permitted the Plaintiff to substitute "Penn Hospice at Rittenhouse" (Penn Hospice) as the defendant in place of "Penn Medicine at Rittenhouse."

At trial, the Penn Defendants contended that Judge Ceisler's order limited Plaintiff's pursuit of liability to establishing negligence on the part of Penn Hospice for the

2

decreased frequency of turning and repositioning Ms. Crew from every two to every three hours. That was an incorrect interpretation of Judge Ceisler's order.

The order dismissed the claims against *all four* Penn Defendants in Count II for corporate negligence and in Count III for "breach of contract oral agreement." It dismissed the claim for "negligence" in Count I *only* against Penn Presbyterian, the Trustees, and Penn Hospice. None of the claims in Count I were dismissed against Penn Medicine, and all of them remained for trial. Because of the substitution of Penn Hospice for Penn Medicine, all of those claims remained against Penn Hospice at trial.

Trial began on October 17, 2016, and the jury delivered its verdict on October 27, 2016. The jury found that Penn Hospice was not negligent and did not answer the causation or damages questions on the verdict slip.

Plaintiff filed a timely post-trial motion (PTM) challenging Judge Ceisler's grant of summary judgment and various alleged trial errors committed by the trial judge. The trial judge limited her review of the PTM to the alleged trial errors.

The trial judge denied the PTM and entered judgment on the jury's verdict on February 15, 2017. Plaintiff filed a timely notice of appeal and a timely Pa.R.A.P. 1925(b) Statement of Errors after being ordered to do so by the trial judge.

## II. Issues on Appeal

Plaintiff's 1925(b) Statement lists four issues regarding the summary judgment entered by Judge Ceisler, and six issues regarding alleged trial errors committed by this trial judge. Judge Ceisler filed her own Pa.R.A.P. 1925 opinion on June 16, 2017, addressing the summary judgment issues. Consequently, the trial judge will discuss only the issues of alleged trial error. The issues have been reordered so that all of the

3

summary judgment and all of the trial error issues are grouped together, although their original section letters remain as in the original.

## A. Summary Judgment issues

A.     CORPORATE NEGLIGENCE

The trial court erred in granting Defendants' Motion for Partial Summary Judgment dated January 27, 2016 (see Exhibit "A") that the Plaintiff could not present a claim of corporate negligence against the Defendants, Penn Presbyterian Medical Center, Trustees of the University of Pennsylvania, Penn Hospice at Rittenhouse and Penn Medicine Rittenhouse. Plaintiff did oppose Defendant's [sic] Motion for Summary Judgment by Answer to same.

\* \* \* \* \*

C.     VICARIOUS LIABILITY

The trial court did err at law and abused its discretion when it did dismiss certain vicarious liability claims on January 27, 2016 (see Exhibit "A") against the Penn Defendants, and granted the Defendants' Motion for Partial Summary Judgment on the vicarious negligence claims against Penn Presbyterian Medical Center, Trustees of the University of Pennsylvania and all Penn Defendants other than Penn Medicine at Rittenhouse which is a fictitious name.

D.     BREACH OF ORAL CONTRACT

The trial court did err at law and abused its discretion when it did dismiss certain breach of oral contract claims on January 27, 2016 (see Exhibit "A") against the Penn Defendants, and granted the Defendants' Motion for Partial Summary Judgment on the breach of oral contract claims against Penn Presbyterian Medical Center, Trustees of the University of Pennsylvania and all Penn Defendants other than Penn Medicine at Rittenhouse which is a fictitious name.

\* \* \* \* \*

H.     MOTION FOR MODIFICATION OR CHANGE OF DECISION

Plaintiff requests that the trial court modify or change its decision to include a claim of corporate negligence and vicarious liability, and grant a

4

new trial. Plaintiff's counsel raised said issues prior to trial by Answer to Motion for Summary Judgment.

## B. Alleged trial errors

B.     ADMISSION OF CONSENTS AND RELEASES AT TRIAL

The trial court committed an error of law and an abuse of discretion in permitting the admission of the consents and releases signed by the Plaintiff into evidence at the time of trial. Consents for treatment are irrelevant to a cause of action in medical negligence pursuant to *Brady v. Urbas*, 2015 Pa. Lexis 655 (Pa. 2015). The trial court admitted the consents and releases into evidence over Plaintiff's objections, and they were considered by the jury during their deliberations.

The trial court committed an error of law and abused its discretion which did harm the Plaintiff when it denied Plaintiff's Motion in Limine, Control No. 16101859 regarding informed consent and releases as the Plaintiff did not consent to the negligence of the Defendants.

This admission of evidence to the jury was an abuse of discretion and an error of law which did prejudice the Plaintiff. Further, the trial court ignored stare decisis of the Pennsylvania Supreme Court on the issue which was an error of law that did harm the Plaintiff.

\* \* \* \* \*

E.     FAILURE TO PERMIT EXPERT OPINION TESTIMONY OF MEDICAL NEGLIGENCE REGARDING MALNUTRITION AND DEHYDRATION

The trial court did err and abuse its discretion when it granted Defendants' objection to preclude Plaintiff form [*sic*] introducing evidence of Defendants' failure to provide Plaintiff's decedent with proper nutrition or to provide hydration by Plaintiff's expert witness. This was an error at law and an abuse of discretion which did prejudice the Plaintiff.

F.     FAILURE TO PRECLUDE TESTIMONY AND EVIDENCE OF PRIOR SETTLEMENT

Defendants were permitted to cross examine Plaintiff and his expert, Dr. Perry Starer, on care and services rendered by Park Pleasant Nursing

home when the Park Pleasant case was a separate case that had been settled prior to the trial in this case in contravention of 42 Pa.C.S. § 6141 (c) [sic] The Pennsylvania Supreme Court states in *Kincy v. Petro*, 606 Pa. 524, 2 A.3d 490 (2009) that cases which are "consolidated for purposes of discovery and trial," retain tier [sic] separate case identities and do not become a "merged" single action. This was an error of law and abuse of discretion which did prejudice the Plaintiff.

## G.   REGULATIONS AS EVIDENCE OF NEGLIGENCE

The trial court committed an error of law and an abuse of discretion which id [sic] prejudice the Plaintiff in prohibiting the Plaintiff's counsel or his experts to introduce and explain to the jury of [sic] the provision of the applicable federal and state laws on hospice care and regulations and guidelines pertinent to the case. This was an error of law and abuse of discretion which did prejudice the Plaintiff.

The trial court held that the federal and state laws, regulations and guidelines on hospices were not to be considered by the jury for cross examination on the standards of care of negligence. This was an error of law and an abuse of discretion which did prejudice the plaintiff.

\* \* \* \* \*

## I.   MOTION FOR JUDGEMENT [sic] NON OBSTANTE VERDICT [sic] (OR SUCH OTHER RELIEF AS IS SPECIFIED BELOW)

Plaintiff seeks judgment against the Defendants because the jury verdict was against the evidence and also against the weight of evidence when it determined that Defendants were not negligent. Plaintiff is entitled to judgment as a matter of law.

The Plaintiff asks for judgment n.o.v. to be entered in his favor, pursuant to Pa.R.C.P. §227.1(a) (2) and direct the entry of judgment in favor of Plaintiff.

Plaintiff is entitled to judgment n.o.v. since facts and evidence demonstrate liability, damages and punitive damages.

Plaintiff is entitled to a judgment n.o.v. based on the law, in conjunction with the evidence, and since the evidence was such that no two

6

reasonable minds could disagree that the outcome should have been rendered in favor of the Plaintiff.

The trial court erred and abused its discretion in failing to grant, in their entirety, Plaintiff's Motions for Directed Verdict.

The trial court's dismissal of Plaintiff's punitive damage claim was against the law and the evidence which now requires the entry of a judgment n.o.v., in favor of the Plaintiff, as to these claims.

## J.     VERDICT SHOULD NOT STAND

The verdict was against the law.

For the reasons sets forth below, none of the alleged trial errors warrant relief. For the reasons set forth in Judge Ceisler's opinion, none of the summary judgment issues warrant relief.

## III. Discussion

### A. Admission of the Consent for Hospice Care form was proper

Plaintiff's PTM contended that it was error to permit the defendants to introduce the July 6, 2012 "Consent for Hospice Care" form signed by Plaintiff David Crew authorizing Ms. Crew's admission to Penn Hospice. Pltf's Ex A.[1] Plaintiff says that this form was really an "informed consent" form, the admission of which is barred in non-informed-consent cases by *Brady v. Urbas*, 631 Pa. 329, 111 A.3d 1155 (2015).

The Plaintiff filed a motion in limine (MIL) to preclude the introduction of this form at Control No. 16101859. Plaintiff filed this MIL two weeks late at 10:40 a.m. on October 17, 2016, the first day of trial. NT 10/17/16 pp. 99-100. The trial judge initially denied the

---

[1]     The form is on the letterhead of Penn Medicine Wissahickon Hospice and refers to Wissahickon Hospice instead of Penn Medicine at Rittenhouse in its text. The Hospice at Rittenhouse is part of the Wissahickon Hospice organization or system.

motion without prejudice as untimely. NT 10/17/16 p. 100; see Order dated Oct. 17, 2016 at Control No. 16101859.

The next morning Plaintiff's attorney renewed her request that the court consider the MIL because defense counsel was going to use the consent form in her opening statement. The court then heard arguments on the merits of the motion and ruled:

> THE COURT: Thank you. Okay. I've reviewed the consent. I've reviewed Brady versus Urbas, which I note is a case involving a surgical consent form in a case in which informed consent was not pled as an issue, and the Court pointed out that in a trial in a medical malpractice complaint that only asserts negligence and not lack of informed consent, evidence that a patient agreed to go forward with the operation in spite of the risk of which she was informed is irrelevant and should be excluded.
>
> I also note that the Court pointed out and held that the evidence that a patient affirmatively consented to treatment after being informed of the risk of that treatment is generally irrelevant to a cause of action sounding in medical negligence. This is not a surgical situation. This is a consent that is not being offered for standard of care per se. It is -- in terms of negligence. It is being offered, as I understand it, to indicate that the family knew that Ms. Crew was progressing towards death medically, and, therefore, eligible for hospice care and that the services were to be of a palliative nature and that's the only thing that the consent may be used for.

NT 10/18/16 pp. 9-10.

The "Consent to Hospice Care" form has no relation to an "informed consent" form because it does not identify the risks of a proposed surgical procedure. On the contrary, it states that "I understand the nature of the hospice care available and am aware that *all treatment will be palliative rather than curative in nature*. Treatment will be for the management of symptoms and to provide comfort for my terminal illness of dementia." (Emphasis added.) No surgical procedures were contemplated by the hospice; indeed,

8

no treatment of any type other than palliative was contemplated. "Palliative" means "relieving or soothing the symptoms of a disease or disorder *without effecting a cure.*" *American Heritage Medical Dictionary* at 387 (2008) (emphasis added).

*Brady* involved a *surgical consent form* regarding the risks and complications of an operation that was signed by the patient before the operation. Our Supreme Court held that the surgical consent form was irrelevant and barred in a medical malpractice action that was based on negligence and which did not also include a battery claim for lack of informed consent. Far from identifying the possible risks of a surgical procedure, the "consent for hospice care" form affirmatively told Ms. Crew and Mr. Crew that *no* treatment aimed at curing her ills would be given to Ms. Crew while she was under hospice care. This was not the same as the surgical consent form at issue in *Brady*.

Furthermore, Plaintiff's attorney opened the door to the introduction of the Consent for Hospice Care form by stating in her opening statement that Ms. Crew's family "wanted their mother to live. That was their intention. They were not taking her to Penn to pass away." Defendant's PTM brief at p. 16, citing NT 10/18/16 pp. 78-79.

There was no error or abuse of discretion in allowing the introduction of the Consent to Hospice Care form at trial.

### B. The court did not abuse its discretion in preventing Dr. Starer from testifying regarding the failure to provide nutrition or hydration

Plaintiff's PTM asserted that the court abused its discretion in preventing Plaintiff's expert, Dr. Perry Starer, from testifying that the hospice's failure to provide nutrition and hydration caused or contributed to Ms. Crew's death. The short answer is that, despite the court's rulings, Dr. Starer did, in fact, testify on direct examination that the failure to

9

provide nutrition and hydration caused or contributed to Ms. Crew's death. This is a summary of his direct testimony on October 18, 2016:

- p. 57. "[G]ood nutrition is important for the healing of a wound."

- pp. 70-71 (emphasis added):

> But I just want to be clear, it's pressure that causes pressure ulcers. Anemia doesn't cause pressure ulcers. Heart disease does not cause pressure ulcers. **Malnutrition does not cause pressure ulcers. What these things do is impair the healing of the ulcer once it occurs.** So if a – it would be the same if you created a wound just by biting. If I bit -- I would never do that, but if you bit a piece of skin out, it was caused by the bite. But if then the person has malnutrition, it's going to be tougher for them to heal the wounds. So the same thing.
>
> So pressure ulcers are caused by pressure. Vascular disease can interfere with healing. Heart disease can interfere with healing. **Malnutrition can interfere with healing.** And this is why we take that into account and try and optimize these areas to assist with healing once a wound has occurred.

- p. 71. In treating a pressure wound, "You have to provide them with the fluids and the nutrients to heal it."

- pp 71-73.

> **Q.** Let me just stop you there for a second. How important is hydration in the healing of a wound?
>
> **A.** I just mentioned hydration, and sometimes I leave it out because to me it's so obvious. Water is life. That's exactly -- that's why we're on this planet instead of Mars. Life depends on water. It is one of the most basic things. There's a water cooler here in the room, and in order for the body to function, there has to be enough fluid -- I'll make it simple once again so I can understand it.
>
> Imagine that the blood system is the highway, which is carrying all the things you need to all the parts of the body and taking away all the waste material and it's using, you know, trucks to transport it. Well, the fluid is the -- is what makes everything move. It's sort -- it's the transportation system. If we dry up, if we

10

become dehydrated, this all breaks down. The highway doesn't function. Things start backing up and things start failing.

Q. Doctor, talk to us, if you will, for a moment about nutrition and why that's important in the healing of a wound.

A. Well, hydration -- this is the way I was actually taught, and it was an interesting experiment they showed us in college. We know that both nutrition and hydration are important, but let's say you can only have one. Which would you go for first? They did a study. They said go to any restaurant and you'll see actually how it works. What do you do first? Do you start eating or do you drink the water? You pick up the water and drink first. Hydration is important. Nutrition is important. They're both equally important, although I will always list hydration first. You have to have them both, nutrition and hydration, because if you become malnourished, you will not get better. You will get worse.

If -- even if you are extremely healthy if you stop eating, you are going to get sick. You will die. You will starve. If you already have illnesses and you are not provided with nutrition, you will do very, very poorly. You will die. We need food. It's that simple. It's that obvious.

Q. Doctor, can you tell us what the medical standard of care is for nutrition, for a person who has a wound and it's -- it needs assessment and care?

[The Court overruled a defense objection to this line of questioning and permitted Plaintiff's attorney to proceed.]

- pp. 80-81:

Q. Doctor, what would be the medical standard of care for hydration for this patient?

MS. KRAMER: Note my objection. Scope of the report.

THE COURT: Very well.

MS. KRAMER: Go ahead.

THE WITNESS: Well, the standard of care is to provide necessary fluids and to monitor that the patient is not suffering from overhydration or underhydration. That is to say you're not giving too much and you're not giving too little.

11

BY MS. WILSON:

Q. Doctor, what would be the medical standard of care with regard to nutrition for this patient?

MS. KRAMER: Same objection, Your Honor.

THE COURT: Noted.

THE WITNESS: The standard of care is to provide adequate calories and protein. These include the participation of a dietician in some settings by which you would determine what is needed based upon the patient's body weight and conditions. The reason I state that is that you need a certain amount of calories in order which [sic.] to just exist, but then you have an additional burden on the body, such as a wound, then more calories are needed.

So the standard of care takes into account the recognition that additional calories need to be provided and additional protein needs to be provided if there is an existing skin wound.

- p. 89. In discussing the Penn Presbyterian discharge summary: 'Nutrition is what I had said before: Calculating the necessary calories and protein and fluid needed. Hospice is an evaluation for goals of care, how you want to approach where the patient is going to be taken care of and how they're going to be taken care of."

- pp. 100-101. In discussing the Penn Presbyterian discharge summary as to nutrition: "The diet. They're calling it a regular diet. It's not a specialized diet. It's not saying a low salt diet, not low sugar. It's just a regular diet but with the regular anything [sic.]. If there is solid food to be given, it should be ground up. Make it easier to swallow. Liquids are to be provided and aspiration precautions are just to ensure that while she's being fed, what is being given doesn't get inhaled into the lungs."

- pp. 116-117. In discussing Exhibit P-11: "Since we are asking for hospice in this case, which I don't know if it's been described to you yet, can be considered palliative care or comfort care or even preparing for death, you would want to know what is the diagnosis that is driving all this. Sometimes it will say cancer in there or some type or AIDS, In this case they wrote "dementia without behavioral disturbance."

12

- p. 120. A DNR [do not resuscitate order] says not to bring back a patient who stops breathing or whose heart stops. "It doesn't say don't do anything else. It means it's really that specific, but it doesn't say don't treat other things. If the patient had an infection, that doesn't tell you not to treat the infection. ..."

- p. 141:

> Q. In the evaluation of wounds, would you look to see whether or not someone was receiving nutrition?
>
> A. Absolutely.
>
> Q. Would you look to see whether or not a person was receiving hydration or water?
>
> A. Yes, I would.
>
> Q. Would you see whether or not Mrs. Crew was receiving water during this time?
>
> A. I did not see that she was receiving water consistently.

- p. 156:

> A. There was a failure to meet the standard of care for turning and repositioning for Ms. Crew during the period of time that she was at Penn at Rittenhouse.
>
> Q. And, Doctor, did those failures of care cause harm -- within a reasonable degree of medical certainty, did those failures or deviations of care by Penn Medicine Rittenhouse cause harm to Mrs. Crew?
>
> A. Yes. Those failures in care did result in harm coming to Ms. Crew.
>
> Q. What was the harm that it caused?
>
> A. It caused the integrity of her skin to be comprised, which increased the nutritional burden upon her body which she was unable to sustain.
>
> Q. Sustain life or sustain?
>
> A. Because she could not sustain her nutritional status, she was unable to sustain life.

13

The Court sustained defense counsel's objection to this follow-up question as being beyond the scope of Dr. Starer's report:

> Q. Doctor, do you have an opinion within a reasonable degree of medical certainty whether or not the professional standards of care were met with regard to hydration for Mrs. Crew?

NT 10/19/16 pp. 156-157. Plaintiff's counsel then concluded with:

> Q. Doctor, do you have an opinion within a reasonable degree of medical certainty, based upon all of the information that you shared with us during the coarse [sic] of this trial, whether or not the harm that was caused to Mrs. Crew contributed to her death?
>
> A. I do have an opinion.
>
> Q. What is your opinion within a reasonable degree of medical certainty?
>
> A. The harm that was caused to Ms. Crew was a contributing factor to death.
>
> Q. Were those harms caused by Penn Medicine's deviations of care?
>
> A. Yes, it was.
>
> Q. And have all of your opinions rendered today been rendered within a reasonable degree of medical certainty?
>
> A. They have been.

NT 10/19/16 pp. 157-158.

Plaintiff did not demonstrate any prejudice from the court's rulings because Dr. Starer was permitted to inform the jury and explain how the lack of nutrition and hydration contributed to Ms. Crew's death. The jury heard that the harm Ms. Crew suffered by the loss of skin integrity caused her to die because she "could not sustain her nutritional status." This issue is without merit.

14

## C. It was not an abuse of discretion to allow the defendants to cross-examine plaintiff's expert on his opinions in his written report, that the negligence of a co-defendant who settled with the plaintiff contributed to Ms. Crew's death

Plaintiff's expert, Dr. Perry Starer, opined in his reports that the decedent received negligent care and treatment at Park Pleasant Nursing Home which contributed to her injuries and death. Those opinions were in the same reports in which Dr. Starer criticized the decedent's care and treatment at Penn Hospice. At trial, the Defendants cross-examined Plaintiff and Dr. Starer on the negligent care and services rendered by Park Pleasant Nursing Home.

Plaintiff's PTM contended that because the Park Pleasant case was filed as a separate case, evidence that it had been settled prior to the trial contravened 42 Pa.C.S. § 6141(c).[2]

---

[2]   § 6141. Effect of certain settlements

(a) Personal injuries. -- Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

(b) Damages to property. -- Settlement with or any payment made to a person or on his behalf to others for damages to or destruction of property shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

(c) Admissibility in evidence. -- Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) and (b) shall not be admissible in evidence on the trial of any matter.

(d) Credits on settlement or judgment. -- All settlements and payments by or on behalf of the person making payment under subsections

15

Plaintiff framed this issue in his PTM and in 1925(b) Statement as the court's "failure to preclude testimony and evidence of prior settlement," referring to the Plaintiff's pre-trial settlement with the Park Pleasant Nursing Home defendants. This claim has no basis in fact. The Defendants never introduced any evidence of Plaintiff's settlement with the Park Pleasant Nursing Home defendants, and the jury did not hear anything about that settlement. Plaintiff's PTM and brief did not identify any place in the trial record where the settlement was presented to the jury.

This issue was waived. "The failure to specify in a post-trial motion how the grounds for relief were asserted at trial, or in pre-trial proceedings, will result in a waiver of those grounds." *Hinkson v. Com., Dep't of Transp.*, 871 A.2d 301, 303 (Pa. Cmwlth 2005) (quashing appeal), citing *Hall v. Jackson*, 2001 PA Super 334, 788 A.2d 390, 401 n.9 (2001) ("the Hospital failed to specify in its post-trial motion how the grounds were asserted at trial and, therefore, waived this argument pursuant to Rule 227.1(b)"). *See* Pa.R.C.P. 227.1(b)(2) ("The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived").

Even were this issue not waived, it still is without merit. The trial court correctly ruled that Dr. Starer could be cross-examined about the opinions in his reports that established the liability of the Park Pleasant Nursing Home defendants. The Superior Court approved a non-settling defendant's use of the testimony of the plaintiff's expert to

_____

(a) and (b) shall be credited to the person making the same against any final settlement or judgment against such person, except that this section shall not be construed in such a manner as to change, alter or amend the effect of Subchapter B of Chapter 83 (relating to contribution among tort-feasors).

42 Pa.C.S.A. § 6141.

establish that the settling defendant bore some responsibility for the plaintiff's injuries, in *Herbert v. Parkview Hosp.*, 2004 PA Super 287, 854 A.2d 1285, 1290-1291.

This same issue arose in a case that this trial judge found very persuasive and followed. *Stang v. Smith*, 39 Pa. D. & C.5th 428, 444-46, 2014 WL 11300415, at *7–8, 2014 Pa. Dist. & Cnty. Dec. LEXIS 943, 23-26; (C.P. Carbon Cty. 2014).[3] President Judge Nanovic held in *Stang* that a non-settling defendant may cross-examine the plaintiff's expert on his report that established the settling defendant's liability. Such cross-examination may be used to impeach the expert and to prevent the false impression that the plaintiff's expert believes that the non-settling defendant alone was responsible for the decedent's death when in fact his opinion is more complex than that. Cross-examination is also permissible to prove the substantive liability of the settling defendant and does not violate the rule that one party may not compel an expert for the opposing party to offer an opinion against his will. 2014 WL 11300415, at *8. President Judge Nanovic explained his decisions as follows:

> Prior to trial, Plaintiff's medical experts opined that not only the Non–Settling Defendants, but also the Settling Defendants, were negligent and responsible for Decedent's death. In particular, in Dr. Graham's expert report he criticized the care provided by both the Non–Settling and Settling Defendants, opining that such care deviated from the applicable standard of care, and concluding that this deviation caused or contributed to Decedent's death. Dr. Rosenbaum, who was critical of Dr. Chaudhry's neurological care of the Decedent, also opined that the delay in getting Decedent to the hospital which resulted from Dr. Lesitsky's failure to advise Mrs. Stang to take her husband to the hospital immediately for stroke evaluation both increased the risk of harm and caused or contributed to the

---

[3] This court recognizes that the "decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority" by the Superior Court. *Fazio v. Guardian Life Ins. Co. of America*, 2012 PA Super 273, 62 A.3d 396, 411.

Decedent's death. Absent settlement of Plaintiff's claims against the Settling Defendants, these experts were scheduled to testify on Plaintiff's behalf against the Settling Defendants.

Once settlement was reached, Plaintiff requested that the testimony of Drs. Graham and Rosenbaum be limited to their opinions critical of the Non–Settling Defendants only and that the Non–Settling Defendants be barred from cross-examining Plaintiff's experts as to any opinions held by them critical of the Settling Defendants. By Order dated September 16, 2013, we refused to restrict the scope of the Non–Settling Defendants' cross-examination of Plaintiff's medical experts as requested by Plaintiff.

In *Boucher v. Pennsylvania Hospital*, 831 A.2d 623 (Pa. Super. 2003), the Court stated:

> Generally, every circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge is a proper subject for cross-examination, including any matter which might qualify or diminish the impact of direct examination. Specifically regarding medical experts, the scope of cross-examination involving a medical expert includes reports or records which have not been admitted into evidence but which tend to refute that expert's assertion.

*Id.* at 629 (citations and quotation marks omitted), *appeal denied,* 847 A.2d 1276 (Pa. 2004). *See also Kemp v. Qualls,* 473 A.2d 1369, 1371 (Pa. Super. 1984) (holding that "[e]very circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge was a proper subject for cross-examination, including any matter which might qualify or diminish the impact of direct examination"); *Rose v. Hoover,* 331 A.2d 878, 882 (Pa. Super. 1974) (stating that "cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff").

**Without question, cross-examination of Plaintiff's medical experts with respect to the entirety of their opinions as expressed in their expert reports *was* permissible for impeachment purposes: the manner in which Plaintiff sought to limit the testimony of her medical experts in her case-in-chief would otherwise have been skewed and given the false impression that these experts were of the opinion that the Non–Settling Defendants alone were responsible for Decedent's death.** *Conley v. Mervis,* 188 A. 350 (Pa. 1936) (explaining that the limitations of cross-examination are not intended to provide a cloak for the

18

concealment of material facts pertaining to issues touched upon in direct examination and that any limitation on the scope of cross-examination that would allow a party to ignore or otherwise suppress facts of an adverse and harmful character would defeat one of the vital reasons for cross-examination), *overruled in part on other grounds by DeWaele v. Metropolitan Life Ins. Co.*, 58 A.2d 34 (Pa. 1948); *see also* Pa.R.E. 611(a)(1) (requiring that the trial court's control over the mode and order of examining witnesses and presenting evidence allow for effective determination of the truth).

**The Non–Settling Defendants had every right to point the finger and elicit evidence through Plaintiff's experts that the cause of Decedent's death was not the failure by Dr. Lesitsky** to immediately refer Decedent to the emergency room for a physical evaluation or any delay in Dr. Chaudhry's neurological consult or treatment—the Non–Settling Defendants' experts being of the opinion that Decedent would have ultimately fully recovered from his stroke—but [for] the failure to provide DVT prophylaxis once Decedent was admitted to the Hospital, for which the Non–Settling Doctors argued they were not responsible.

Moreover, **this evidence was also admissible to prove the substantive liability of the Settling Defendants.** First, the evidence was not hearsay. The opinions being elicited were those of the witness on the stand being cross-examined and they were clearly subject to questioning by all parties. **Nor did such questioning run afoul of the rule that one party may not compel an expert for the opposing party to offer an opinion against his will.** *Boucher*, 831 A.2d at 632. "The basis for this rule is an acknowledgment of an expert's proprietary interest in his own opinion, and the recognition that he should not be required to relinquish it without his consent." *Id.* In contrast, the opinions at issue here were independently subject to disclosure for impeachment such that any proprietary interest against disclosure claimed by Plaintiff's medical experts is illusory.

Nor was there any question that these experts were competent to express the opinions on which they were cross-examined: the experts were employed by Plaintiff; the opinions were prepared at Plaintiff's behest, with the intent of having them offered at trial against the Settling Defendants; the opinions were identical to those which Plaintiff intended to present against the Settling Defendants had settlement not been reached; and, understandably, no objection to competency was raised by Plaintiff.

19

*Stang v. Smith,* 39 Pa. D. & C.5th at 444-46, 2014 WL 11300415, at *7-8, 2014 Pa. Dist. & Cnty. Dec. LEXIS at 23-26 (emphasis and paragraph breaks added).[4]

In the present case, the Penn defendants had "every right" to cross-examine Dr. Starer regarding *all* of the opinions expressed in his expert reports for impeachment purposes and as substantive evidence. As in *Stang*, the manner in which Plaintiff sought to limit the testimony of his medical experts in his case-in-chief would otherwise have been skewed and given the false impression that Dr. Starer was of the opinion that Penn Hospice at Rittenhouse alone was responsible for Plaintiff's decedent's death. Id.

### D. The trial court did not abuse its discretion in excluding unidentified "federal and state laws, regulations and guidelines"

Plaintiff claims that "the trial court erred in not permitting the contents of federal and state laws, regulations and guidelines to be used at trial." A fundamental problem with this issue is that the Plaintiff's PTM and brief failed to identify the specific "federal and state laws, regulations and guidelines" he claims were improperly excluded. Plaintiff cited to "Federal Hospice Regulations, 42 CFR 418," without identifying to which of the fifty-seven individual regulations he was referring. Plaintiff mentioned the thousand-page federal Omnibus Budget Reconciliation Act of 1987 (OBRA) and "OBRA regulations," without providing a citation for the act or the regulations, and without citing to a specific section of the act or regulations. His PTM filings did not mention any state laws or regulations, or "guidelines" of any sort.

---

[4] This portion of *Stang* was followed by *Rapchak v. Haldex Brake Prod. Corp.,* No. 2:13-CV-1307, 2016 WL 3752908, at *5 (W.D. Pa. July 14, 2016), which also is not binding precedent.

This issue was raised in the Defendants' MIL No. 16100436 discussed at NT 10/17/16 pp. 47-56. During the discussion, the Plaintiff's only mention of specific hospice regulations were 42 CFR 418, 42 CFR 418 et seq., and 42 CFR 418.56. NT 10/17/16 pp. 49, 50, & 53. Plaintiff admitted that the

> MS. WILSON: Federal regulations issued by Medicare to support COBRA [*sic*] are found at 42 CFR 483. I agree that those are not applicable to a hospice. They apply to skilled nursing facilities, also known as nursing homes.

NT 10/17/16 p. 50.

The trial court deferred ruling on the motion in limine until the issue arose at trial. NT 10/17/16 pp. 55-56.

Plaintiff's only post-trial citation to the trial record where the issue arose was NT 10/26/16 pages 21-36. Plaintiff wanted to cross-examine Barbara Felder, a certified nurse practitioner who worked at Penn Hospice, on her knowledge of 42 CFR §§ 418.81.1-116 regarding the hospice's responsibility to provide food and dietary counseling. The trial court pointed out that the regulation identified by Plaintiff "sounds like it is the menu of available options and care and treatment that must be part of an institution's setup in order to qualify for Medicare," that it does not "in any way indicate that each and every case, every patient must be provided with each and every one of those menu items." NT 10/26/16 pp. 27-28. The trial court also pointed out that the regulation's definition of dietary counseling relied on what was in the individual patient's treatment plan, and that Ms. Crew's hospice treatment plan was silent on dietary issues and forced nutrition and hydration. *Id.* p. 30. The trial court ruled as follows:

> THE COURT: All right. So far you've shown that in dietary provisions have to be -- have to be available and that they have to

21

be given if it's part of the patient's plan. I don't see anything about dietary on this plan that you've shown.

MS. WILSON: So can I inquire of her what skin breakdown precaution means?

THE COURT: I think it's fair game.

MS. WILSON: Okay.

NT 10/26/16 pp. 35-36.

The trial court correctly ruled that it was irrelevant to cross-examine the witness on the need to give Ms. Crew food and water because Ms. Crew's treatment plan was silent on dietary issues and did not require forced nutrition and hydration.[5]

### E. The "Motion for Judgement [*sic*] Non Obstante Verdict [*sic*] (or Such Other Relief as is Specified Below)" is boilerplate that did not preserve any issue for review.

Plaintiff's 1925(b) Statement raises the following waived issues:

Plaintiff seeks judgment against the Defendants because the jury verdict was against the evidence and also against the weight of evidence

---

[5] At page 27 of his PTM brief, the Plaintiff raised the issue of the trial court's failure to charge the jury on negligence per se. Plaintiff's PTM, however was silent on the issues of negligence per se and the failure to charge the jury on negligence per se. See ¶¶ 21-21. Plaintiff therefore waived the issues of negligence per se and the charge given to the jury. "If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *Vautar v. First Nat. Bank of Pennsylvania,* 2016 PA Super 5, 133 A.3d 6, 10 (*en banc*), citing *Chalkey v. Roush,* 757 A.2d 972, 975 (Pa. Super. 2000) (*en banc*), affirmed, 569 Pa. 462, 805 A.2d 491 (2002). "Only issues specifically raised in post-verdict motions can be considered and will be preserved for appeal, and issues raised only in briefs in support of those motions may not be considered." *Cherry v. Willer,* 317 Pa. Super. 58, 63, 463 A.2d 1082, 1084 (1983). See *Siculiento v. K & B Amusements Corp.,* 2006 PA Super 380, 915 A.2d 130, 132 n.2 (an issue not specifically set forth in the post-trial motion is waived even though the party argues the issue in his brief supporting the post-trial motion).

when it determined that Defendants were not negligent. Plaintiff is entitled to judgment as a matter of law.

The Plaintiff asks for judgment n.o.v. to be entered in his favor, pursuant to Pa.R.C.P. §227.1(a)(2) and direct the entry of judgment in favor of Plaintiff.

Plaintiff is entitled to judgment n.o.v. since facts and evidence demonstrate liability, damages and punitive damages.

Plaintiff is entitled to a judgment n.o.v. based on the law, in conjunction with the evidence, and since the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the Plaintiff.

*[¶ 5]* The trial court erred and abused its discretion in failing to grant, in their entirety, Plaintiff's Motions for Directed Verdict.

*[¶ 6]* The trial court's dismissal of Plaintiff's punitive damage claim was against the law and the evidence which now requires the entry of a judgment n.o.v., in favor of the Plaintiff, as to these claims.

### VERDICT SHOULD NOT STAND

The verdict was against the law.

The issues in ¶ 5 were not raised in Plaintiff's PTM and are waived. *Vautar v. First Nat. Bk. of Pa.*, 2016 PA Super 5, 133 A.3d 6, 10 (*en banc*) ("If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.").

The issues regarding punitive damages in ¶ 6 are irrelevant because the jury decided that the defendant was not negligent and never reached the issues of causation or damages.

The other issues are identical to those included in the PTM and were waived because they were not argued in the Plaintiff's PTM brief. *Jackson v. Kassab,* 2002 PA Super 370, 812 A.2d 1233, 1235 ("common sense mandates that any issue raised in a motion for post-trial relief must be briefed and argued to the trial court. [F]ailure to set

23

forth an argument in briefs filed in the court in support of post-trial motions constitutes a failure to preserve the issue or issues not argued." (Internal citations and quotes omitted.)).

All of the issues were also waived because they were impermissible boilerplate that did not specify the reasons supporting the claims for relief. Pa.R.C.P. 227.1(b)(2) provides that post-trial relief may not be granted unless the grounds for relief, "are specified in the motion. ... Grounds not specified are deemed waived."

"The result of this requirement is to deter and disapprove 'motions which set forth mere 'boilerplate' language'" *Frederick v. City of Pittsburgh,* 132 Pa. Cmwlth. 302, 306, 572 A.2d 850, 852 (1990) (citation omitted). *See Cauthorn v. Owens Corning Fiberglas Corp.,* 2004 PA Super 1, 840 A.2d 1028, 1033-1034 (very general assignments of error in post-trial motions, such as "the verdict is against the law" or "against the evidence," do not preserve any issues for review in the trial court or in the appellate court); *Siculiento v. K & B Amusements Corp.,* 2006 PA Super 380, 915 A.2d 130, 133 (reserving the "right" in a post-trial motion to raise "such other errors as may be disclosed by a transcript of the trial," does not preserve any grounds for relief not specifically stated in the motion).

"In requiring the motion to state the specific grounds therefor, motions which set forth mere 'boilerplate' language are specifically disapproved. A post-trial motion must set forth the theories in support thereof 'so that the lower court will know what it is being asked to decide.'" *Hinkson v. Com., Dep't of Transp.,* 871 A.2d 301, 303 (Pa. Cmwlth 2005), *quoting* 1983 Explanatory Comment to Rule 227.1, *quoting Frank v. Peckich,* 257 Pa.Super. 561, 579, 391 A.2d 624, 632-633 (1978) (*en banc,* opinion in support of affirmance).

The Superior Court "has consistently held that a post-verdict motion, stating merely that the evidence was insufficient to support the verdict or that the verdict was against the weight of the evidence, will preserve *no* issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or why the verdict was against the weight of the evidence." *Commonwealth v. Hosey*, 364 Pa. Super. 578, 581-82, 528 A.2d 659, 661 (1987) (emphasis in the original), *quoting Commonwealth v. Tillia,* 359 Pa.Super. 302, 318, 518 A.2d 1246, 1254 (1986).

The Plaintiff's post-trial motion did not conform to these mandatory requirements resulting in the waiver of those issues in the trial court. Those same deficiencies also result in the waiver of these issues on appeal.

Very general assignments of error in Pa.R.A.P. 1925(b) statements, such as "the verdict is against the law" or "against the evidence," do not preserve any issues for review in the trial court or in the appellate court. *Cauthorn v. Owens Corning Fiberglas Corp.,* 2004 PA Super 1, 840 A.2d 1028, 1033-1034. See *Commonwealth v. Lemon,* 2002 PA Super 234, 804 A.2d 34, 37 (a 1925(b) Statement is too vague to preserve issues for appellate review when it merely states that the verdict was "against the evidence," "against the weight of the evidence," and "against the law"). Similarly, the claim that the verdict was "against the weight of the credible evidence as to all of the charges" is so vague that it is the functional equivalent of filing no 1925(b) Statement at all, and all issues are deemed to be waived. *Commonwealth v. Seibert,* 2002 PA Super 15, 799 A.2d 54, 62.

25

The Plaintiff's claims of error and requests for judgment n.o.v. challenge the sufficiency of the evidence to support the verdicts.[6] "When challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 2009 PA Super 181, 981 A.2d 274, 281, *quoting Commonwealth v. Williams*, 2008 PA Super 250, 959 A.2d 1252, 1257.

The Plaintiff's boilerplate and insufficient Rule 1925(b) statement fails to point out to the trial court or to the appellate court how the trial court misinterpreted the facts or the law. All of these issues are waived.

## IV. CONCLUSION

For the foregoing reasons, the Superior Court should affirm the judgment entered on the jury's verdict in favor of Defendant-Appellee Penn Hospice at Rittenhouse, and against the Plaintiff-Appellant David Crew as the administrator of the Estate of Essie Crew, and in his own right.

BY THE COURT:

Lachman, J.

---

[6] "The remedy of entry of judgment in a party's favor is proper only when a party successfully challenges the *sufficiency* of the evidence." *Morin v. Brassington*, 2005 PA Super 107, 871 A.2d 844, 851 (emphasis in the original).

"On appeal from the refusal of the lower court to enter judgment n.o.v., the sole duty of the appellate court is to decide whether there was sufficient evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference reasonably to be drawn from the evidence and rejecting all unfavorable testimony and influences." *G.J.D. v. Johnson*, 447 Pa.Super. 340, 342, 669 A.2d 378, 379 (1995).

26